JAMES C. CORUM v. R. J. REYNOLDS TOBACCO COMPANY, INC.

(Filed 11 October, 1933.)

1. **Negligence A e—Negligence may be proven by circumstances from which reasonable inference of negligence may be drawn.**

   While neither negligence nor proximate cause will be presumed from the fact of injury, and mere conjecture will not support an action for damages, negligence need not be proven directly, but proof of circumstances from which reasonable men could draw divergent conclusions as to negligence is sufficient to overrule defendant's motion of nonsuit.

2. **Food A a—Evidence in this case held sufficient to take case to jury in consumer's action against manufacturer of plug tobacco.**

   Evidence tending to show that plaintiff bought from a local retailer plug tobacco manufactured by defendant, and that plaintiff while on his way home from the store, bit the tobacco and was injured by a fish-hook which stuck through his lip, that all of the paper wrapper had not been removed from the tobacco, which had recently come from the store, and that the inside of the plug showed the imprint of the fish-hook, that other foreign substances had been found in the same brand of tobacco manufactured by defendant within two months preceding the injury, and that the foreman in defendant's plant had previously had complaints that other foreign substances had been left in the tobacco, *is held* sufficient to overrule defendant's motion of nonsuit, the evidence being sufficient to prove circumstances from which a reasonable inference of negligence could be drawn without invoking the doctrine of *res ipsa loquitur*.

3. **Same—Plug tobacco held to come within the meaning of the rule of liability of manufacturers to ultimate consumers.**

   While plug tobacco is not a food it is an article manufactured for consumption by an ultimate consumer, and is capable of inflicting serious physical injury when foreign and deleterious substances are allowed to become embedded therein, and it comes within the rule that a manufacturer of food or drink is liable for injuries caused the ultimate consumer by reason of foreign or deleterious substances negligently left in the manufactured article.

APPEAL by defendant from *Schenck, J.,* at May Term, 1933, of YADKIN.

CORUM *v.* TOBACCO CO.

The defendant manufactures a brand of plug or chewing tobacco known as "Apple Sun-cured." It sold some of this tobacco to J. W. Smitherman, a wholesale merchant in Winston-Salem, who in turn sold it to Norman Brothers at East Bend, in Yadkin County. On 4 June, 1931, the plaintiff bought a plug of it from Norman Brothers and returned to his home, which is about a mile from East Bend. He offered evidence tending to show that at 1:30 o'clock while going back to East Bend he put a part of the plug in his mouth to bite off a chew and "jerked the tobacco," when a fish-hook which was embedded in the plug "stuck on the inner side of his lip and came out on the outside"; that with the fish hook and the tobacco he went to a physician who removed the hook; that after its removal, the plaintiff "prized the tobacco open" and found a mark inside "where the fish-hook had been lying"; that on the end of the hook there was a piece of string about two inches long; that he suffered pain, was given anti-toxin to prevent tetanus, had difficulty in opening and closing his mouth, and complained of stiffness in his jaw and neck.

The defendant introduced witnesses who explained the process of manufacture by the approved methods of modern machinery and offered testimony tending to show that the defendant was not negligent but used due care in the manufacture of its products, and that the plaintiff's injury was not the result of any neglect of duty on its part.

The defendant in apt time moved to dismiss the action as in case of nonsuit; the motion was denied and the defendant excepted.

Two issues were submitted to the jury and answered as follows:

1. Was the injury to the plaintiff, James C. Corum, caused by the negligence of the defendant R. J. Reynolds Tobacco Company, as alleged in the complaint? A. Yes.

2. What amount, if any, is plaintiff, James C. Corum, entitled to recover of the defendant, R. J. Reynolds Tobacco Company? A. $1,200.

Judgment for plaintiff; appeal by defendant. The several exceptions are referred to in the opinion.

*Elledge & Wells and W. M. Allen for plaintiff.*
*Benbow & Hall for defendant.*

ADAMS, J. The appellant noted a number of exceptions during the trial but the basal controversy relates to the motion for nonsuit, the defendant contending that the record contains no adequate evidence of negligence which is actionable. We have repeatedly held, in accord with the general principle, that the fact of personal injury is not regarded as proof either of negligence or of proximate cause, and that a mere conjecture will not support an action for damages. *Grimes v. Coach Co.,* 203

N. C., 605; *Rountree v. Fountain, ibid.,* 381. The plaintiff, however, is not required to make out his case by direct proof, but may rely upon circumstances from which a reasonable inference of negligence may be drawn, *Dail v. Taylor,* 151 N. C., 284; *Perry v. Bottling Co.,* 196 N. C., 175, in which event the evidence must be interpreted most favorably for the plaintiff, and if it is of such character that reasonable men may form divergent opinions of its import it is customary to leave the issue to the final award of the jury.

There are many decisions to the effect that one who prepares in bottles or packages foods, medicines, drugs, or beverages and puts them on the market is charged with the duty of exercising due care in the preparation of these commodities and under certain circumstances may be liable in damages to the ultimate consumer. *Broadway v. Grimes,* 204 N. C., 623; *Broom v. Bottling Co.,* 200 N. C., 55; *Harper v. Bullock,* 198 N. C., 448; *Grant v. Bottling Co.,* 176 N. C., 256; *Cashwell v. Bottling Works,* 174 N. C., 324.

In this case the plaintiff adduced evidence tending to show that the defendant is the sole manufacturer of "Apple Sun-cured Tobacco"; that the tobacco in question was of this brand and had the appearance of having recently come from the store; that it was protected by a wrapper; that all the wrapper had not been removed at the time of the injury; that when a part of it was torn away the imprint of a fish-hook and a string which had been embedded in the plug of tobacco was discovered; that some other foreign substance had been found in the same brand of tobacco within two months preceding the injury; and that the foreman of the machine room had previously had complaints that other foreign substances had been left in the manufactured product. *Perry v. Bottling Co., supra.* Without the necessity of invoking the maxim *res ipsa loquitur,* the plaintiff introduced independent evidence which called for a verdict.

Without antagonizing the stated principle, the defendant takes the position that tobacco is not a food or within the category of any of the articles numerated above and is hence beyond the scope of the cited cases. The word "food" has been variously defined by lexicographers as "nutritive material taken into the body for the purpose of growth, repair, or maintenance; that which is eaten or drunk for nourishment; whatever supplies nourishment to organic bodies." It may be conceded for the present purpose that tobacco is not a food; but it does not necessarily follow that the defendant is exempt from liability.

In *Pillars v. R. J. Reynolds Tobacco Company,* 78 So. (Miss.), 365, the plaintiff sued the defendant for damages resulting from the chewing of a piece of Brown Mule tobacco in which a decomposed human toe was concealed. After referring to the general rule and its exceptions

together with the contention that the limit has been reached by the courts and that the facts did not warrant an exception in favor of the plaintiff the Court observed: "We know that chewing tobacco is taken into the mouth, that a certain proportion will be absorbed by the mucous membrane of the mouth, and that some, at least, of the juice or pulp will and does find its way into the alimentary canal, there to be digested and ultimately to become a part of the blood. Tobacco may be relatively harmless, but decaying flesh, we are advised, develops poisonous ptomaines, which are certainly dangerous and often fatal. Anything taken into the mouth there to be masticated should be free of those elements which may endanger the life or health of the user. . . . The fact that the courts have at this time made only the exception mentioned to the general rule does not prevent a step forward for the health and life of the public. The principle announced in the cases which recognize the exceptions, in our opinion, apply, with equal force, to this case."

The principle was maintained and applied in the subsequent case of *R. J. Reynolds Tobacco Company v. Loftin,* 99 So. (Miss.), 13, in which it appeared that in a plug of chewing tobacco there was embedded the partially decomposed body of a small snake.

In *Liggett & Myers Tobacco Company v. Rankin,* 54 S. W. (Ky.) 612, it was shown that a worm "about the size of a match with many stingers on it" had been pressed into a plug of tobacco in the process of manufacture, and that when the plaintiff chewed the tobacco the stingers became embedded in his mouth, the inside of which "looked like a man's face with a week's growth of beard." The plaintiff suffered pain, was unable to work, and brought suit for damages. Remarking that chewing tobacco is made to be chewed and that things dangerous to health when taken into the mouth are no less within the rule than things that are taken into the stomach, the Court said: "While tobacco is not a food, it acts upon the nerves and the nerves are no less to be considered than the stomach on which the food acts. The juices from the chewing of tobacco do in fact find their way to the stomach, and poison in chewing tobacco is no less dangerous to health than poison in chewing gum or a liquid taken for its effect on the nerves. Here there was a poisonous worm and the case cannot be distinguished from those where poison was found in other articles manufactured and sold for human consumption. Although chewing tobacco is not a food, it is within the rule which applies to all things manufactured for human consumption which are dangerous to health or life."

Substantially the same principle was enforced in *Foley v. Liggett & Myers Tobacco Co., Inc.,* 241 N. Y. Sup., 233, in which the grievance was personal injury resulting from the use of "Velvet" tobacco which contained the mutilated fragments of a dead mouse. "If the nature of

a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger." *McPherson v. Buick Motor Co.*, 217 N. Y., 382.

The defendant has cited *Liggett & Myers Tobacco Co. v. J. J. Cannon*, L. R. A., 1916 A (Tenn.) 940, in which it was held that a manu-facturer of chewing tobacco was not liable for injury to a consumer because of the incorporation into the product of a poisonous insect if he had no actual or constructive knowledge of its existence; but some of the decisions heretofore mentioned referred to the opinion in that case and concluded that the distinction therein stated cannot be maintained. Upon the merits of the present case we entertain a similar opinion. A fish-hook embedded and concealed in a plug of tobacco, though not a poison, is no less capable of inflicting serious physical injury. The trial court was correct in denying the motion for nonsuit.

There are other exceptions in the record but none is of sufficient gravity to require a new trial. They raise familiar questions which have often been considered and determined adversely to the contention of the defendant.

No error.