TONY B. NICHOLSON, Plaintiff v. AMERICAN SAFETY UTILITY CORPORATION, DUKE POWER COMPANY and NORTH HAND PROTECTION, a division of SIEBE NORTH, INC., SIEBE NORTH HOLDINGS CORP., SIEBE, INC., SIEBE INDUSTRIES, INC., and SIEBE PLC, Defendants

No. COA95-554

(Filed 15 October 1996)

**1. Products Liability § 28 (NCI4th)— safety gloves—failure to inspect and warn—summary judgment improper**

Summary judgment was improperly entered for defendants in plaintiff electrical lineman's product liability action based upon negligence against the manufacturer and seller of safety gloves worn by plaintiff when he was injured by electricity from an energized line where there was a genuine issue of material fact as to the alleged failure of defendants to properly test and inspect the gloves and to convey adequate warning of potential deficiencies in the gloves.

**Am Jur 2d, Products Liability §§ 305, 324; Summary Judgment § 27.**

**Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury. 76 ALR2d 9.**

**Manufacturer's duty to test or inspect as affecting his liability for product-caused injury. 6 ALR3d 91.**

**Failure to warn as basis of liability under doctrine of strict liability in tort. 53 ALR3d 239.**

NICHOLSON v. AMERICAN SAFETY UTILITY CORP.

[124 N.C. App. 59 (1996)]

2. **Products Liability § 9 (NCI4th)— manufacturer and seller—privity—buyer's employee**

While the privity requirement has been eliminated for a buyer's employee to bring an action against the manufacturer of an allegedly defective product for breach of implied warranty, N.C.G.S. § 99B-2(b), a buyer's employee is still barred by lack of privity from suit against a seller grounded upon breach of implied warranty.

**Am Jur 2d, Products Liability §§ 602, 613.**

**Privity of contract as essential to recovery in action based on theory other than negligence, against manufacturer or seller of product alleged to have caused injury. 75 ALR2d 39.**

**Privity of contract as essential in action against remote manufacturer or distributor for defects in goods not causing injury to person or to other property. 16 ALR3d 683.**

3. **Products Liability § 9 (NCI4th)— testing by seller—seller not manufacturer—buyer's employee—privity required**

A seller's testing and inspection of safety gloves sold to plaintiff's employer did not render the seller a "manufacturer" of the gloves, and an action by the buyer's employee against the seller for breach of implied warranty was barred by a lack of privity.

**Am Jur 2d, Products Liability §§ 569, 596.**

4. **Products Liability § 28 (NCI4th)— safety gloves—breach of implied warranty—issue of fact**

A genuine issue of material fact was presented regarding the existence of a defect in plaintiff electrical lineman's safety gloves at the time they left defendant manufacturer's possession so that summary judgment was improperly entered for defendant manufacturer in plaintiff's action for breach of implied warranty.

**Am Jur 2d, Products Liability §§ 224, 228; Summary Judgment § 27.**

5. **Products Liability § 18 (NCI4th)— contributory negligence—use of defective product**

Assuming *arguendo* that contributory negligence bars a product liability action based upon either negligence or breach of war-

ranty, N.C.G.S. § 99B-4(3) requires that the contributory negligence be in the use of the allegedly defective product.

**Am Jur 2d, Products Liability §§ 933, 947.**

**Contributory negligence or assumption of risk as defense to action for personal injury, death, or property damage resulting from alleged breach of implied warranty. 4 ALR3d 501.**

**6. Products Liability § 18 (NCI4th)— safety gloves—contributory negligence not shown**

Plaintiff electrical lineman's product liability action against the manufacturer and seller of safety gloves was not barred by plaintiff's contributory negligence where (1) defendants' contention that plaintiff relied exclusively upon his gloves and failed to employ other safety measures to protect himself from electrocution did not relate to his use of the allegedly defective gloves, and (2) defendants did not establish that plaintiff was contributorily negligent as a matter of law in his use of the gloves by damaging the gloves, failing to store them properly, or failing to examine the gloves for damage prior to use.

**Am Jur 2d, Products Liability § 932, 933.**

Appeal by plaintiff from judgment entered 21 February 1995 by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 22 February 1996.

*Twiggs, Abrams, Strickland & Trehy, P.A., by Douglas B. Abrams and Jerome P. Trehy, Jr., for plaintiff-appellant.*

*Wankser and Lindler, by H. Bright Lindler, for plaintiff-appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, by Linda Ambrose, for Harrison-Wright.*

*Smith Helms Mulliss & Moore, L.L.P., by Richard W. Ellis and Leslie C. O'Toole, for defendant-appellees Siebe North, Inc. and Siebe Holdings Corp.*

*Cranfill, Sumner & Hartzog, L.L.P., by Robert W. Sumner and H. Lee Evans, Jr., for defendant-appellee American Safety Utility Corp.*

NICHOLSON v. AMERICAN SAFETY UTILITY CORP.

[124 N.C. App. 59 (1996)]

JOHN, Judge.

Plaintiff contends the trial court erred by granting defendants' motions for summary judgment and by denying his motion for partial summary judgment. We agree in part.

Pertinent facts and procedural information are as follows: On 26 January 1990, plaintiff, an electrical lineman for Harrison-Wright, Inc., was working on a Duke Power project to connect high-voltage overhead power lines to an underground cable. On the date in question, plaintiff was standing in an elevated, two-person aerial utility bucket located beneath energized overhead lines. At that time, plaintiff was connecting a de-energized conductor to a de-energized underground cable. The overhead energized lines carried approximately 7,200 volts of electricity, "phase-to-ground." In accordance with Duke Power regulations, plaintiff or his helper placed rubber hoses over the energized lines to shield them from the close proximity of the lines, and in addition the men wore protective helmets and thick rubber lineman's safety gloves.

Plaintiff's helmet had blown off at least twice prior to the incident at issue, and each time he had lowered the utility bucket to retrieve it. However, after a gust of wind blew the helmet off a third time, plaintiff continued tightening a "split bolt." An energized line thereupon either touched or came within an extremely short distance of plaintiff's unprotected head. Electricity raced from the overhead line to plaintiff's head and through his body, exiting via his gloved hands which were holding a de-energized, grounded cable. Plaintiff suffered severe and permanent brain and nervous system injuries.

The gloves worn by plaintiff at the time of his injury were purchased by defendant American Safety Utility Corporation (ASU) on 18 March 1989 from defendant Siebe North (Siebe); thereafter, the gloves were sold and delivered by ASU to plaintiff's employer in January 1990. Siebe sold the gloves as Class II lineman's gloves, safe for use with energized lines up to 17,000 volts. Plaintiff obtained the gloves from his employer 23 January 1990 and suffered the subject accident 26 January 1990.

Plaintiff commenced the instant products liability action by filing a complaint 9 December 1992 and an amended complaint 19 January 1993. Suit was brought against Siebe as manufacturer of the gloves worn by plaintiff at the time of the accident, as well as against seller ASU and Duke Power, the latter not a party to this appeal.

## NICHOLSON v. AMERICAN SAFETY UTILITY CORP.

[124 N.C. App. 59 (1996)]

Contending he was injured "when electrical current completed as a direct result of the dangerously defective condition of the subject safety gloves," plaintiff alleged claims of negligence against Siebe and ASU based upon their failure, *inter alia*, to "exercise due care in the testing, inspection, marketing, promotion, sale and/or delivery of the subject safety gloves." Plaintiff's complaint also contained claims of breach of express and implied warranties, including specifically "the failure to provide necessary warnings."

All defendants answered denying liability and asserting numerous affirmative defenses, including contributory negligence, lack of privity, and alteration or damage to the gloves subsequent to defendants' release of possession and control thereof.

Defendants Siebe and ASU moved for summary judgment on all issues, and plaintiff sought summary disposition of the issues of breach of implied warranty and contributory negligence. Following a hearing 13 February 1995, the trial court granted defendants' motions and denied that of plaintiff. From these orders, plaintiff appeals.

We note at the outset that plaintiff has assigned error to the denial of his motion for summary judgment on the issues of breach of implied warranty and contributory negligence. Denial of a motion for summary judgment is interlocutory and non-appealable. *See Lamb v. Wedgewood Corp.*, 308 N.C. 419, 424, 302 S.E.2d 868, 871 (1983). Except as may arise in dealing with arguments properly before this Court, therefore, we decline to consider plaintiff's assignment of error directed to denial of his motion for summary judgment.

It is well-established that

[t]o succeed in a summary judgment motion, the movant has the burden of showing, based on pleadings, depositions, answers, admissions, and affidavits, that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

*Taylor v. Ashburn*, 112 N.C. App. 604, 606, 436 S.E.2d 276, 278 (1993), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). Summary judgment is appropriate only when it appears that "even if the facts as claimed by [the non-movant] are taken as true, there can be no recovery," *Lowder v. Lowder*, 68 N.C. App. 505, 506, 315 S.E.2d 520, 521, *disc. review denied*, 311 N.C. 759, 321 S.E.2d 138 (1984), with the non-movant's materials being "indulgently regarded" and the movant's "closely scrutinized," *Burrow v. Westinghouse Electric Corp.*, 88 N.C. App.

347, 350, 363 S.E.2d 215, 217, *disc. review denied*, 322 N.C. 111, 367 S.E.2d 910 (1988).

A summary judgment movant may meet its burden of showing the lack of a triable issue of fact by demonstrating the non-existence of an essential element of plaintiff's claim or by establishing an affirmative defense as a matter of law. *Green v. Wellons, Inc.*, 52 N.C. App. 529, 532, 279 S.E.2d 37, 40 (1981). If a movant is successful in its showing, the burden shifts to the non-movant to produce a forecast of evidence sufficient to create a genuine issue of material fact. *Cockerham v. Ward and Astrup Co. v. West Co.*, 44 N.C. App. 615, 618, 262 S.E.2d 651, 654, *disc. review denied*, 300 N.C. 195, 269 S.E.2d 622 (1980).

Plaintiff's action, brought pursuant to the Products Liability Act (the Act), *see* N.C. Gen. Stat. Chapter 99B (1989), is based on two separate theories—negligence and breach of warranty, both express and implied. We discuss each separately.

## I. Negligence

Summary judgment is generally inappropriate in a negligence action, *Brown v. Power Co.*, 45 N.C. App. 384, 386, 263 S.E.2d 366, 368, *disc. review denied*, 300 N.C. 194, 269 S.E.2d 615 (1980),

> even when there is no dispute as to the facts, because the issue of whether a party acted in conformity with the reasonable person standard is ordinarily an issue to be determined by a jury.

*Surrette v. Duke Power Co.*, 78 N.C. App. 647, 650, 338 S.E.2d 129, 131 (1986). *See also Green*, 52 N.C. App. at 532, 279 S.E.2d at 39 (because of "peculiarly elusive nature of the term 'negligence', the jury generally should pass on the reasonableness of conduct in light of all the circumstances of the case"). Notwithstanding, summary judgment may be proper in a negligence action

> where there is no question as to the credibility of witnesses and the evidence shows either (1) a lack of any negligence on the part of the defendant, or (2) that plaintiff was contributorily negligent as a matter of law.

*Surrette*, 78 N.C. App. at 650-51, 338 S.E.2d at 131 (citations omitted).

The essential elements of a products liability action predicated upon negligence are: "(1) evidence of a standard of care owed by the reasonably prudent person in similar circumstances; (2) breach of

that standard of care; (3) injury caused directly or proximately by the breach, and; (4) loss because of the injury." *Ziglar v. Du Pont Co.*, 53 N.C. App. 147, 150, 280 S.E.2d 510, 513, *disc. review denied*, 304 N.C. 393, 285 S.E.2d 838 (1981) (citation omitted). In addition, a plaintiff must present evidence the product was in a defective condition at the time it left the defendant's control. *See Cockerham*, 44 N.C. App. at 619, 262 S.E.2d at 655.

A *manufacturer* must use reasonable care in the design and manufacture of products, and this includes the duty to perform "reasonable tests and inspections to discover latent hazards." *Id.* at 619, 262 S.E.2d at 654. Moreover, a manufacturer must exercise "the 'highest' or 'utmost' caution, commensurate with the risks of serious harm involved, in the production of a dangerous instrumentality or substance." *Ziglar*, 53 N.C. App. at 154, 280 S.E.2d at 515. *See Corum v. Tobacco Co.*, 205 N.C. 213, 216-17, 171 S.E. 78, 80 (1933) (dangerous product is one which puts life and limb in great peril when negligently made).

In addition, a manufacturer is under an obligation to provide warnings of any dangers associated with the product's use "sufficiently intelligible and prominent to reach and protect all those who may reasonably be expected to come into contact with [the product]." *Id.* at 155, 280 S.E.2d at 516. Failure to warn adequately renders the product defective. *Ziglar*, 53 N.C. App. at 155, 280 S.E.2d at 516.

A non-manufacturing *seller* acting as a "mere conduit" of the product, on the other hand, ordinarily has no affirmative duty to inspect and test a product made by a reputable manufacturer. *See Sutton v. Major Products Co.*, 91 N.C. App. 610, 614, 372 S.E.2d 897, 900 (1988). However, this rule does not stand where the seller knows or has reason to know of a product's dangerous propensity. *Id.* Moreover, where the seller acts as more than a "mere conduit," such as in the case *sub judice* where seller performed product tests and inspections, it must do so with reasonable care. *See Crews v. W.A. Brown & Son*, 106 N.C. App. 324, 329-30, 416 S.E.2d at 924, 928 (1992) (seller not mere conduit if it performs "auxiliary functions in connection with sale" such as assembling and installing product); *see also Baker v. Dept. of Correction*, 85 N.C. App. 345, 346, 354 S.E.2d 733, 734 (1987) ("law imposes upon every [entity which] enters upon an active course of conduct a positive duty to exercise ordinary care to protect others from harm and a violation of such duty constitutes negligence").

Further, the exercise of due care requires a seller to warn of any hazard associated with use of a product if: (1) the seller has "actual or constructive knowledge of a particular threatening characteristic of the product;" and (2) the seller "has reason to know that the purchaser will not realize the product's menacing propensities for himself." *Ziglar*, 53 N.C. App. at 151, 280 S.E.2d at 513.

[1] Review of the record in light of the foregoing principles reveals the existence of a genuine issue of material fact as to the alleged failure of defendants Siebe and ASU to test and inspect the gloves properly and to convey adequate warning of potential deficiencies in the gloves.

At the summary judgment hearing, defendants presented evidence tending to show their compliance with industry inspection procedures for lineman safety gloves, including the subject gloves herein. Each defendant presented evidence it had conducted industry standard visual inspections and dielectric safety tests on the gloves used by plaintiff on 26 January 1990, the Siebe test taking place on or about 17 February 1989 and the ASU test on or about 12 January 1990.

Dielectric testing is a process of immersing and filling a glove in a vat of water, and then subjecting the inside and outside of the glove to increasing voltage. If the glove fails to insulate, a circuit is completed and the failure is recorded by the testing machine. Siebe's evidence indicated the gloves withstood dielectric testing of 20,000 volts for three minutes; ASU indicated it utilized a dielectric test of 20,000 volts for one and one-half minutes.

Defense counsel for ASU argued plaintiff had failed to present evidence of a discoverable defect, and Siebe's counsel contended there was no proof a defect existed when the gloves left Siebe's possession approximately 10 months prior to the accident. Ultimately, both defendants maintained the gloves must have been damaged by plaintiff in use or storage during the three days prior to the accident, and further argued that plaintiff's post-accident tests, which revealed defects in both gloves, had been improperly performed.

In contrast, plaintiff presented evidence, including his cross-examination at deposition of defense witnesses, that (1) there were no signs plaintiff had abused or misused the gloves or that the gloves had been improperly stored subsequent to leaving defendants' pos-

**NICHOLSON v. AMERICAN SAFETY UTILITY CORP.**

[124 N.C. App. 59 (1996)]

session, (2) that line workers, including plaintiff, were expected to rely on rubber safety gloves such as those at issue for protection from electrocution, and were permitted to do so by the National Electrical Safety Code and OSHA, and (3) that plaintiff had been electrocuted at approximately 7,200 volts—far less than the rated "use" voltage of 17,000 for the gloves.

Plaintiff also presented evidence that the right and left hand gloves each failed dielectric testing subsequent to the accident. According to statistical evidence developed from Siebe's own production reports and presented by plaintiff's expert, failure of this test by both gloves was a virtual impossibility if both Siebe and ASU had indeed properly tested the gloves as they asserted. In addition, the expert countered defendants' claims that plaintiff's test results were unreliable due to failure to wash the gloves prior to testing, and presented an explanation of why the right hand glove failed in the field at approximately 7,200 volts, but a failure did not register during subsequent testing until 10,000-15,000 volts were administered. Further, record evidence tended to show that despite defendant Siebe's knowledge that a certain percentage of gloves would fail in the field due to manufacturing defects, Siebe warned neither ASU nor line workers such as plaintiff of the potential for failure.

Finally, regarding the less-contested element of proximate cause, plaintiff presented evidence that burns on plaintiff's right hand correlated precisely with the area of the gloves which failed during post-accident testing.

Viewing the record in the light most favorable to plaintiff, *see Lowder*, 68 N.C. App. at 506, 315 S.E.2d at 521, we conclude plaintiff produced a forecast of evidence sufficient to create a genuine issue of material fact in response to defendants' attempted showing of the non-existence of an essential element of plaintiff's negligence claim. *See Green*, 52 N.C. App. at 532, 279 S.E.2d at 40. Most notably, evidence of the electrocution of plaintiff at 7,200 volts, far less than the "use" rating of the gloves, evidence of certain manufacturing defects in the gloves, and the testimony of plaintiff's expert calling into question defendants' assurances of testing and inspecting the gloves, work to offset defendants' showing. Questions of fact therefore remain regarding whether defendants "acted in conformity with the reasonable person standard," *see Surrette*, 78 N.C. App. at 650, 338 S.E.2d at 131, in testing and inspecting the gloves and, particularly as to defendant Siebe, in providing adequate warnings.

## II. Breach of Warranties

Because plaintiff did not assign as error the trial court's entry of summary judgment for defendants on the issue of express warranty, this issue is not properly before the Court, *see* N.C. R. App. P. 10(a), and we do not address it.

ASU and Siebe first attack plaintiff's claim of breach of implied warranty by asserting lack of privity. As to ASU, which sold the gloves, we find this argument persuasive.

[2] Privity via a contractual relationship between the plaintiff and the seller or manufacturer of an allegedly defective product is required to maintain a suit for breach of implied warranty, "[e]xcept where the barrier of privity has been legislatively or judicially removed." *Crews*, 106 N.C. App. at 331, 416 S.E.2d at 929. Regarding an action against a "manufacturer" under the Act, our General Assembly in G.S. § 99B-2(b) has eliminated the privity requirement for employees of the buyer. *See id.* at 332, 416 S.E.2d at 929-30. However, a buyer's employee nonetheless is barred from suit against a *seller* grounded upon breach of implied warranty in that neither the Act, *see* G.S. Chapter 99B, nor the U.C.C. provisions regarding implied warranties, *see* N.C. Gen. Stat. §§ 25-2-314 to 25-2-318 (1986), abolish the privity requirement in such instance. *See Crews*, 106 N.C. App. at 332-33, 416 S.E.2d at 930.

[3] The involvement of ASU as seller in testing and inspecting the gloves does not fulfill the definitional requirements of a "manufacturer" under the Act. *See* G.S. § 99B-1(2). Plaintiff's products liability claim against ASU predicated upon breach of implied warranty was therefore barred, and entry of summary judgment in favor of ASU on this issue was not error.

[4] However, it is undisputed that Siebe qualifies as a manufacturer under G.S. § 99B-1(2), and plaintiff's implied warranty claim against it thus is not precluded by lack of privity. *See* G.S. § 99B-2(b). Notwithstanding, Siebe further argues summary judgment in its favor was proper because it demonstrated the absence of an essential element of plaintiff's implied warranty claim. We disagree.

A successful plaintiff in a breach of implied warranty of merchantability action under G.S. § 25-2-314 and, by reference, under the Act, *see Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 303, 354 S.E.2d 495, 498 (1987), must prove (1) the goods bought and sold were subject to an implied warranty, (2) the goods did not comply

with the warranty in that they were defective at the time of sale, (3) the defective nature of the goods caused injury; and (4) that damages resulted. *Id.* at 301, 354 S.E.2d at 497. Moreover, an action for breach of implied warranty of merchantability may be based upon the manufacturer's failure to warn. *Bryant v. Adams*, 116 N.C. App. 448, 465, 448 S.E.2d 832, 841 (1994), *disc. review denied*, 339 N.C. 736, 454 S.E.2d 647 (1995).

Specifically, Siebe contends it is entitled to summary judgment by virtue of having demonstrated a failure of the evidence relating to the second element—proof of defect at the time of sale. However, having determined above there exists a genuine issue of material fact regarding the existence of a defect in the gloves at the time they left Siebe's possession, we similarly conclude those issues of fact to be present with reference to plaintiff's claim of breach of implied warranty against Siebe.

### III. Contributory Negligence

Finally, both Siebe and ASU argue summary judgment was in any event proper on grounds plaintiff was contributorily negligent as a matter of law. Assuming *arguendo* contributory negligence acts as a bar to products liability actions based upon either negligence or breach of warranty, *see* Charles E. Daye & Mark W. Morris, *North Carolina Law of Torts*, § 26.42 (1991) (contributory negligence normally not a bar in action for breach of warranty, because "the defenses set out in section 99B-4 protect the manufacturer or seller from liability in 'any products liability action;' " presumably contributory negligence available no matter what the theory of recovery); *see also Gillespie v. American Motors Corp.*, 69 N.C. App. 531, 533, 317 S.E.2d 32, 33 (1984) (contributory negligence acted as bar to recovery of damages "whether plaintiff's claim [was] based on negligence or breach of warranty"), defendants' argument fails.

We note initially that the burden of proof on the issue of contributory negligence rests with defendants, and that

> [w]hen the party with the burden of proof moves for summary judgment [it] must show that there are no genuine issues of fact, that there are no gaps in [its] proof, [and] that no inferences inconsistent with [its] prevailing on the motion] arise from the evidence. . . .

*Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721, 329 S.E.2d 728, 729 (1985). Further, as with ordinary negligence actions, sum-

mary judgment is appropriate on issues of contributory negligence only where "no other reasonable conclusion may be reached." *Bryant*, 116 N.C. App. at 472, 448 S.E.2d at 845 (citation omitted).

In N.C. Gen. Stat. § 99B-4, the Act codifies contributory negligence as it applies to product liability actions and additionally "sets out or explains more specialized fact patterns which would amount to contributory negligence in a products liability action." *Champs Convenience Stores v. United Chemical Co.*, 329 N.C. 446, 452-53, 406 S.E.2d 856, 860 (1991). The section provides:

> No manufacturer or seller shall be held liable in any product liability action if:
>
> . . . .
>
> (3) The claimant failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant.

G.S. § 99B-4(3) (1989) (emphasis added).

**[5]** Defendants maintain that plaintiff's action should be barred as a matter of law because he "failed to exercise reasonable care under the circumstances" as required by the statute. In the main, defendants point to plaintiff's failure to secure or monitor adequately the position of the hoses placed over the energized lines, his failure to keep his helmet properly secured and to retrieve it immediately after it blew off, and his performance of the job in the proximity of energized lines when it could have been completed after de-energizing the lines.

On the other hand, plaintiff emphasizes that

> [s]ection 99B-4(3) requires that the failure of the Plaintiff to exercise reasonable care must be *in his use of the product involved in the case.*

(emphasis in original). Therefore, plaintiff continues, contributory negligence does not apply unless plaintiff's use of the *gloves* was unreasonable under the circumstances, regardless of any alleged failure *otherwise* to employ safety devices and act in an appropriate manner.

In resolving the question raised by plaintiff, our duty is to construe G.S. § 99B-4(3) in context with other provisions of the Act, or as a "composite whole" so as to harmonize the sections in order to effec-

tuate legislative intent. *Duke Power Co. v. City of High Point*, 69 N.C. App. 378, 387, 317 S.E.2d 701, 706, *disc. review denied*, 312 N.C. 82, 321 S.E.2d 895 (1984). *See also Turlington v. McLeod*, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988) ("In the construction of statutes, [the court's] primary task is to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise.").

A manufacturer or seller can avoid liability under the Act if, under G.S. § 99B-4(1), plaintiff was negligent in his "use of the product . . . contrary to any express and adequate instructions or warnings," or additionally, under G.S. § 99B-4(2), if plaintiff "use[d] . . . the product" even after his discovery of a "defect or unreasonably dangerous condition." Interpreting G.S. § 99B-4(3) in context with these neighboring subsections, we conclude it likewise requires the negligence of a plaintiff to be in the "use of the [allegedly defective] product."

Indeed, research reveals that in the cases before our Courts in which contributory negligence under G.S. 99B-4 has been alleged, all have involved the plaintiff's *use* of the alleged defective product. *See, e.g., Champs*, 329 N.C. 446, 406 S.E.2d 856 (1991); *Finney v. Rose's Stores, Inc.*, 120 N.C. App. 843, 463 S.E.2d 823 (1995), *cert. denied*, 343 N.C. 306, 471 S.E.2d 70 (1996); *Bryant*, 116 N.C. App. 448, 448 S.E.2d 832 (1994); *Morgan v. Cavalier Acquisition Corp.*, 111 N.C. App. 520, 432 S.E.2d 915, *disc. review denied*, 335 N.C. 238, 439 S.E.2d 149 (1993); *Smith v. Selco Products, Inc.*, 96 N.C. App. 151, 385 S.E.2d 173 (1989), *disc. review denied*, 326 N.C. 598, 393 S.E.2d 883 (1990). *See also Sexton by and through Sexton v. Bell Helmets, Inc.*, 926 F.2d 331, 338-39 (4th Cir.), *cert. denied*, 502 U.S. 820, 116 L. Ed. 2d 52 (1991) (although plaintiff's negligence in operating unlighted motorcycle at sundown while traveling too close to center line and not watching road may have contributed to collision, "no evidence has been advanced to show that he negligently used the helmet or that the negligent use of the helmet was a cause of his injuries;" plaintiff's product liability action against helmet manufacturer thus not barred by applicable contributory negligence statute, Ky. Rev. Stat. Ann. § 411.320(3), nearly identical to G.S. § 99B-4(3) herein).

[6] In the event G.S. §99B-4 requires, as we have held, lack of reasonable care by plaintiff in *use* of the gloves, defendants contend plaintiff's exclusive reliance upon his gloves to protect himself from electrocution constitutes contributory negligence as a matter of law. This argument is unavailing in that it comprises a circular reassertion

of defendants' contention that plaintiff was negligent *in general*—as opposed to *in his use of the product*—by failing to employ other means of ensuring his safety from electrocution.

Defendants further assert plaintiff damaged the gloves or failed to store them properly during the three day period of his possession, and that he failed to examine the gloves for damage prior to use. Assuming *arguendo* such contentions find support in the evidence, we cannot say "no other reasonable conclusion may be reached," *Bryant*, 116 N.C. App. at 472, 448 S.E.2d at 845, and hence defendants likewise do not establish as a matter of law plaintiff's negligent use of the gloves "under the circumstances." *See also Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673, 268 S.E.2d 504, 507 (1980) ("Plaintiff may be contributorily negligent if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety.").

Based on the foregoing, we affirm the entry of summary judgment in favor of ASU on the issue of breach of implied warranty and in favor of both defendants on the issue of breach of express warranty. However, regarding the issues of the defendants' negligence, Siebe's breach of implied warranty, and plaintiff's contributory negligence, the grant of summary judgment is reversed.

Affirmed in part; reversed in part.

Judges EAGLES and WALKER concur.