IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-268

Filed 18 February 2026

Union County, Nos. 21CVS000440-890, 22CVS000890-890

STEPHEN C. WEAVER, Plaintiff,

v.

AMV HOLDINGS LLC and MVRB2, LLC, Defendants.

---

STEPHEN C. WEAVER, Plaintiff,

v.

MEDUSA DISTRIBUTION, LLC, Defendant.

Appeal by plaintiff from orders entered 18 July 2023 and 5 August 2024 by Judge Daniel A. Kuehnert in Union County Superior Court. Heard in the Court of Appeals 19 November 2025.

*Dowling PLLC, by Troy D. Shelton; Wilson, Lackey, Rohr & Hall, P.C., by Destin C. Hall; and The Paynter Law Firm, PLLC, by Stuart M. Paynter and Sara Willingham, for plaintiff-appellant.*

*The Duggan Law Firm, PC, by Christopher M. Duggan, for defendants-appellees AMV Holdings LLC and MVRB2, LLC.*

*Wilson, Elser, Moskowitz, Edelman & Dicker LLP, by Michael S. Rothrock and Peter Clements, for defendant-appellee Medusa Distribution, LLC.*

ZACHARY, Judge.

Plaintiff Stephen C. Weaver suffered serious injuries when a lithium-ion cell battery intended for use in his vaping device exploded in his pocket. Following an unsuccessful suit to recover his damages, Plaintiff now appeals from 1) the trial court's order granting partial summary judgment in favor of Defendants AMV Holdings LLC and MVRB2, LLC (collectively "AMV Defendants") on Plaintiff's punitive damages claim, and 2) the court's order granting summary judgment on behalf of AMV Defendants and Defendant Medusa Distribution, LLC ("Medusa") on Plaintiff's remaining claims. After careful review, we determine that Plaintiff's claims are governed by the North Carolina Products Liability Act and that Plaintiff cannot surmount Defendants' "sealed container" defense under N.C. Gen. Stat. § 99B-2(a) (2023). Accordingly, we affirm the orders of the trial court.

## I.    Background

On 12 April 2019, Plaintiff owned a residential floor and tile business. Plaintiff had recently begun using a "vaping" device—which vaporizes a liquid mixture of nicotine, flavoring, propylene glycol, and other additives for inhalation—as an alternative to smoking. To power the device, Plaintiff had purchased two 21700 cylindrical lithium-ion cell ("CLC") batteries and one 18650 CLC battery. As Plaintiff worked at a job site, one of the 21700 CLC batteries "experienced a 'thermal runaway'

event while . . . in [Plaintiff's] pants pocket."[1] The resulting flames and chemicals severely burned Plaintiff's leg and hand, causing serious, permanent injuries.

Plaintiff filed a complaint on 22 February 2021 against AMV Holdings LLC and MadVapes Franchising, LLC. On 30 August 2021, Plaintiff filed a First Amended Complaint, which replaced MadVapes Franchising, LLC, with "MVRB2, LLC." In the First Amended Complaint, Plaintiff alleged that he had purchased the CLC batteries—including the defective battery—from MadVapes stores owned and operated by AMV Defendants in North Carolina. Plaintiff further alleged that the batteries came in "plain white boxes"; that neither the vaping device nor the batteries "came with written warnings that the batteries could spontaneously catch fire and explode"; and that no MadVapes employee warned him of the danger of a spontaneous explosion. Plaintiff raised three claims against AMV Defendants: inadequate warning or instruction under N.C. Gen. Stat. § 99B-1, *et seq.*; negligence; and breach of the implied warranty of merchantability for a particular purpose under N.C. Gen. Stat. § 25-2-315.

On 20 December 2021, AMV Defendants filed a motion for summary judgment, asserting that "all of Plaintiff's claims against . . . AMV Defendants . . . are barred by the sealed container doctrine enumerated at N.C. Gen. Stat. §[ ]99B-2(a)" of the North

---

[1] The trial court provided a definition of "thermal runaway event" in its findings of fact: "A [CLC] battery 'thermal runaway event' has been described as an explosive event where the battery heats to extremely high temperatures, melts, burns, disintegrates, and becomes like a flame-thrower."

Carolina Products Liability Act. AMV Defendants asserted that Plaintiff had proffered no evidence to indicate that AMV Defendants could have discovered prior to sale that the battery in question had the "internal manufacturing defect" identified by Plaintiff's expert as the cause of the explosion. In response, Plaintiff filed a "Rule 56(f) motion to refuse or continue [the] motion for summary judgment" pending further discovery. Following a hearing, on 7 February 2022, the trial court entered an order, *inter alia*, denying AMV Defendants' motion for summary judgment and denying Plaintiff's motion as moot.

Plaintiff moved to further amend his complaint, which the trial court granted by order entered on 19 April 2022. In the Second Amended Complaint, filed on 27 April 2022, Plaintiff added a claim for gross negligence, alleging that AMV Defendants were "grossly negligent, careless, and reckless" by failing to warn Plaintiff "of the risk and danger of exploding" CLC batteries and by selling a battery that they knew "was inappropriate and not intended for use in vaping devices and posed an unreasonable risk of spontaneously catching fire and/or violently exploding without warning."

Additionally, on 1 April 2022, Plaintiff filed a separate complaint against Medusa, the distributor from which AMV Defendants purchased the CLC batteries. Plaintiff raised five claims: inadequate warning or instruction under N.C. Gen. Stat. § 99B-1, *et seq.*; negligence; gross negligence; breach of the implied warranty of merchantability for a particular purpose under N.C. Gen. Stat. § 25-2-315; and, in

the alternative, breach of the implied warranty of merchantability under N.C. Gen. Stat. § 25-2-314.

AMV Defendants filed their answer to the Second Amended Complaint on 27 May 2022, generally denying Plaintiff's allegations and advancing 21 affirmative defenses. As one of these defenses, AMV Defendants again contended that Plaintiff's claims were barred by the Products Liability Act.

On 1 September 2022, the Chief Justice of the North Carolina Supreme Court designated Plaintiff's suit against AMV Defendants as "exceptional" under Rule 2.1 of the General Rules of Practice for the Superior and District Courts and assigned the matter to Judge Daniel A. Kuehnert. On 16 May 2023, the trial court entered an order granting Defendants' joint motion to consolidate the actions pursuant to Rule 42 pending a Rule 2.1 designation in the suit against Medusa; the suit was so designated on 19 May 2023, and the actions were consolidated.

On 14 February 2023, AMV Defendants moved for partial summary judgment as to Plaintiff's claim for punitive damages. On 18 July 2023, the trial court entered an order granting this motion. In sum, the court determined that Plaintiff had failed to forecast clear and convincing evidence—when viewed in the light most favorable to Plaintiff—of one or more of the requisite aggravating factors enumerated in N.C. Gen. Stat. § 1D-15.

Plaintiff filed a First Amended Complaint against Medusa on 7 June 2024, in which he raised two additional claims: unfair and deceptive trade practices under

N.C. Gen. Stat. § 75-1.1, *et seq.*, and punitive damages under N.C. Gen. Stat. § 1D-1, *et seq.*

On 7 June 2024, AMV Defendants filed a motion for summary judgment as to Plaintiff's remaining claims. Medusa filed an amended motion for summary judgment dated 24 June 2024. Medusa also filed an answer and affirmative defenses in response to Plaintiff's First Amended Complaint on 24 June 2024.

On 5 August 2024, the trial court entered an order, *inter alia*, granting all Defendants' motions for summary judgment. In its order, the court set forth an in-depth analysis of two issues raised in this case: Plaintiff's failure-to-warn claim and the sealed container defense invoked by Defendants. Regarding the former, the court concluded that Plaintiff's evidence "fail[ed] to show that the subject battery . . . created an unreasonably dangerous condition or posed a substantial risk of harm such as would satisfy either [N.C. Gen. Stat.] § 99B-5(a)(1) or § 99B-5(a)(2)." The court emphasized that the explosion was caused by a "latent, internal manufacturing defect," instead of the "external short circuit risks" upon which Plaintiff's failure-to-warn claim focused.

Regarding the sealed container defense, the trial court noted that, even if Plaintiff did not receive the battery in a sealed container, his own expert testified that "the latent, internal manufacturing defect could *only* be identified through a CT scan and expert analysis. There [was] no forecasted evidence that it was reasonable for Defendants to have had CT scan equipment and experts necessary to detect this

latent, internal manufacturing defect." Responding to Plaintiff's argument that the sealed container defense is inapplicable where the manufacturer is not subject to the jurisdiction of North Carolina's courts, the trial court characterized this as an "exception to"—rather than an element of—the affirmative defense and placed the burden on Plaintiff to produce evidence of lack of jurisdiction, which it found that Plaintiff had failed to meet.

Plaintiff filed timely notice of appeal from the order granting Defendants' motion for partial summary judgment on Plaintiff's punitive damages claim and from the order granting Defendants' motion for summary judgment on Plaintiff's remaining claims.

## II.     Discussion

Plaintiff raises three issues on appeal: whether the trial court erred in (1) dismissing his failure-to-warn claim; (2) granting summary judgment for Defendants on their sealed container defense; and (3) dismissing his remaining claims. For the following reasons, we conclude that each of Plaintiff's claims against Defendants is barred by the sealed container defense.

## A. Standard of Review

It is axiomatic that "to succeed in a summary judgment motion, the movant has the burden of showing, based on pleadings, depositions, answers, admissions, and affidavits, that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Nicholson v. Amer. Safety Utility Corp.*, 124

N.C. App. 59, 63, 476 S.E.2d 672, 675 (1996) (cleaned up), *aff'd as modified*, 346 N.C. 767, 488 S.E.2d 240 (1997). "Summary judgment is appropriate only when it appears that even if the facts as claimed by the non-movant are taken as true, there can be no recovery, with the non-movant's materials being indulgently regarded and the movant's closely scrutinized." *Id.* (cleaned up). "The showing required for summary judgment may be accomplished by proving an essential element of the opposing party's claim . . . would be barred by an affirmative defense." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

## B. Products Liability Act

Chapter 99B of the North Carolina General Statutes is known as the "Products Liability Act." In sum, the Products Liability Act subjects the seller or distributor of a defective product to liability for harm to persons or property resulting from the defective product.

The Products Liability Act defines the term "[p]roduct liability action" as "any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of any product." N.C. Gen. Stat. § 99B-1(3). "A products liability claim normally contemplates injury or damage caused by a defective product" for which "recovery is premised on either negligence or on the contract principles of warranty." *Red Hill Hosiery Mill, Inc. v.*

*Magnetek, Inc.*, 138 N.C. App. 70, 74–75, 530 S.E.2d 321, 325, *disc. review denied*, 353 N.C. 268, 546 S.E.2d 112 (2000).

In the present case, all of Plaintiff's claims against Defendants fall within the scope of the Products Liability Act. In his separate complaints, Plaintiff advanced claims for negligence, gross negligence, inadequate warning or instruction under the Products Liability Act, breach of the implied warranty of merchantability, and breach of the implied warranty of merchantability for a particular purpose.[2] These claims arise from "personal injury . . . caused by or resulting from the manufacture . . . of any product,"—namely, the vaping device—and as such are governed by the Products Liability Act. N.C. Gen. Stat. § 99B-1(3); *see also Red Hill*, 138 N.C. App. at 74–75, 530 S.E.2d at 325–26 (concluding that claims for breach of implied warranty of merchantability and negligence constituted products liability claims); *Morgan v. Cavalier Acquisition Corp.*, 111 N.C. App. 520, 524, 527, 432 S.E.2d 915, 917, 919 (concluding that claims for negligence, breach of implied warranty, and strict liability constituted products liability claims), *disc. review denied*, 335 N.C. 238, 439 S.E.2d 149 (1993); *Crews v. W.A. Brown & Son*, 106 N.C. App. 324, 328, 416 S.E.2d 924, 927–28 (1992) (concluding that claims for negligence, failure to provide adequate

---

[2] Plaintiff also alleged that Medusa engaged in unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, *et seq.* We do not address whether this claim constitutes a products liability action, in that Plaintiff's briefs are bereft of any argument concerning this claim. Consequently, we deem the claim abandoned. *See* N.C.R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.").

warnings, breach of express warranties, and breach of implied warranties of merchantability and fitness for a particular purpose constituted products liability claims).

## C. Sealed Container Defense

The Products Liability Act prohibits holding sellers or distributors strictly liable for harm and sets forth defenses to products liability claims. N.C. Gen. Stat. §§ 99B-1.1, 99B-2. In the case at bar, the dispositive issue is whether Plaintiff's claims are defeated by the sealed container defense of the Products Liability Act. This defense bars a products liability claim where (1) "the product was acquired and sold by the seller in a sealed container" or (2) "the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of." *Id.* § 99B-2(a).

In the instant case, the parties debate at length whether Plaintiff purchased the battery in a "sealed container," with Plaintiff alleging that "when [MadVapes] received the batteries, . . . [they were] in white cardboard sleeves that could be opened. The boxes were not sealed or taped shut." Yet, the crux of the controversy before us is whether Defendants were afforded a "reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of." *Id.*

In its order, the trial court found that Plaintiff's injuries resulted from a "latent, internal manufacturing defect." Plaintiff does not contest this aspect of the order, nor does he contend that any Defendant, in the reasonable exercise of care, should have uncovered the latent defect in the CLC battery. Therefore, on the facts before us in the instant case, we conclude that it would be unreasonable to expect a distributor or seller of CLC batteries to disassemble, closely inspect, and submit each battery to expert testing as would be necessary to determine the existence of a latent manufacturing defect such as that in the battery in question.

## D. Exception to Sealed Container Defense

Nevertheless, Plaintiff maintains that Defendants are barred from asserting the sealed container defense because the Products Liability Act includes the proviso that this defense "shall not apply if the manufacturer of the product is not subject to the jurisdiction of the courts of this State or if such manufacturer has been judicially declared insolvent." *Id.* Plaintiff argues that it was error for the trial court to conclude that "the burden of proving the exception in section 99B-2(a) . . . rested with [Plaintiff]," and moreover, even if he properly bore such burden, the sealed container defense is inapplicable in this instance because "[t]he forecast of evidence show[ed] that the courts of North Carolina do not have personal jurisdiction over the manufacturer."[3] We disagree.

---

[3] The manufacturer's insolvency is not argued by any party on appeal.

It is well established that with regard to "an affirmative defense, the burden of proof lies with the defendant." *Price v. Conley*, 21 N.C. App. 326, 328, 204 S.E.2d 178, 180 (1974). Indeed, Defendants do not dispute that N.C. Gen. Stat. § 99B-2(a) constitutes an affirmative defense in part and that they bear the burden of demonstrating that they had no reasonable opportunity to inspect the CLC battery. Rather, the disagreement arises over which party bears the burden of proving that "the manufacturer . . . is not subject to the jurisdiction of the courts of this State." N.C. Gen. Stat. § 99B-2(a).

The first question before us on this issue is whether the jurisdiction clause serves as an exception to, or an element of, the affirmative defense. This Court has long held that "[t]he party seeking the benefit of the [statutory] exception bears the burden of establishing that they fit squarely within the exception." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 175 N.C. App. 309, 312, 623 S.E.2d 315, 318 (citation omitted), *aff'd*, 360 N.C. 641, 636 S.E.2d 564 (2006). Here, the party benefiting from the potential exception is Plaintiff, given that the sealed container defense would be unavailable to Defendants if the exception applied. Accordingly, Plaintiff would properly bear the burden of proving that the manufacturer of the defective battery is not subject to the jurisdiction of North Carolina's courts if we interpret this clause to be an exception to, instead of an element of, the sealed container defense.

"When interpreting a statute, we must apply the rules of statutory

construction. The principal rule of statutory construction is that the legislature's intent controls. That intent may be inferred from the nature and purpose of the statute, and the consequences which would follow, respectively, from various constructions." *Id.* at 311–12, 623 S.E.2d at 318 (cleaned up).

"[I]n undertaking to determine what is and what is not an affirmative defense," the answer "depends ultimately on broad considerations of policy." *Speas v. Merchants' Bank & Tr. Co. of Winston-Salem*, 188 N.C. 524, 531, 125 S.E. 398, 402 (1924) (citation omitted). The Products Liability Act is primarily based on the policy of consumer protection, which is achieved by holding manufacturers, distributors, and sellers accountable for injuries caused by defective products. The sealed container defense, on the other hand, seeks to balance the interests of the parties, in part by protecting sellers who could not reasonably be expected to know of a given product's defective nature. Notably, however, this defense does not apply where the manufacturer, who would normally be the liable party, is insolvent or beyond the jurisdiction of North Carolina's courts, N.C. Gen. Stat. § 99B-2(a), thus rendering these *exceptions* to the sealed container defense. As such, the plaintiff bears the burden of demonstrating that one of these exceptions applies to the facts at hand.

To this end, Plaintiff contends in the alternative that "[t]he forecast of evidence shows that the courts of North Carolina do not have personal jurisdiction over the manufacturer of the exploding battery." Again, we disagree.

Plaintiff's entire argument rests on a series of assumptions. First, Plaintiff

asserts that because "[t]he batteries were acquired by a Chinese distributor named ECIG Fiend . . . , then sold and shipped to Medusa by the Chinese distributor in New Jersey[,] [t]he only plausible inference from the evidence is that the manufacturer is Chinese." Building on this assumption, Plaintiff then alleges that "even if that Chinese manufacturer could be identified, there is no way for a court in North Carolina to exercise jurisdiction over that manufacturer"—thereby assuming that Chinese distributors do not purchase their products from outside of China and that Chinese manufacturers do not purposely avail themselves of North Carolina markets. *See Bartlett v. Est. of Burke*, 285 N.C. App. 249, 265, 877 S.E.2d 432, 443–44 (2022) ("[T]he mere manufacture and introduction of a product into the world's stream of commerce without purposeful availment is insufficient to establish personal jurisdiction in North Carolina." (cleaned up)), *appeal dismissed and disc. review denied*, 386 N.C. 662, 905 S.E.2d 219 (2024).

Even though we are to indulgently regard Plaintiff's evidence, *see Nicholson*, 124 N.C. App. at 63, 476 S.E.2d at 675, Plaintiff is nonetheless required to "set forth specific facts showing there is an issue for trial." *Doggett v. Welborn*, 18 N.C. App. 105, 107, 196 S.E.2d 36, 37, *cert. denied*, 283 N.C. 665, 197 S.E.2d 873 (1973). Admittedly, it is not in Defendants' interest to reveal the identity of the manufacturer of the defective battery where the manufacturer is not subject to the jurisdiction of our courts, if Defendants in fact possess this information. Nevertheless, regarding North Carolina courts' alleged lack of jurisdiction over the manufacturer, Plaintiff's

evidence on this issue reduces to the bare fact that the distributor positioned above Medusa in the supply chain was Chinese. This is not sufficient to survive summary judgment.

We conclude that Plaintiff failed to show, on the issue of jurisdiction, that "there is an issue for trial," *id.*, and having properly invoked it, Defendants remain shielded from liability by the sealed container defense.

## E. Additional Bars to Assertion of Sealed Container Defense

Plaintiff further contends that there are "other sealed container requirements" that Defendants failed to satisfy.

First, Plaintiff maintains that Defendants did not purchase the defective battery from a "reputable manufacturer" and therefore cannot assert the sealed container defense, citing *Sutton v. Major Products Company*, 91 N.C. App. 610, 614, 372 S.E.2d 897, 900 (1988). In *Sutton*, this Court concluded that "a seller of a product made by a *reputable* manufacturer, where he acts as a mere conduit and has no knowledge or reason to know of a product's dangerous propensities, is under no affirmative duty to inspect or test for a latent defect." *Id.* (emphasis added) (cleaned up). Plaintiff alleges that no Defendant "purchased the battery from a reputable manufacturer. It's undisputed that the battery sold to [Plaintiff] was a counterfeit Samsung battery."

Plaintiff's interpretation of *Sutton* overemphasizes the term "reputable." *Sutton* did not undertake to define "reputable" and its disposition did not turn on

whether the manufacturer was indeed reputable. Moreover, cases citing *Sutton* do not turn on the reputability of the manufacturer. *See Nicholson,* 124 N.C. App. at 65, 476 S.E.2d.at 676; *Crews*, 106 N.C. App. at 329, 416 S.E.2d at 928. We also note that in the instant case, it is undisputed that the manufacturer is unknown, rather than a known and disreputable entity. Accordingly, we conclude that in this respect *Sutton* does not apply to the case at hand.

Next, Plaintiff argues that Defendants cannot benefit from the sealed container defense because they "acted as more than 'mere conduits' of the battery manufacturer," citing *Crews*. In *Crews*, this Court determined that when "the seller assembles and installs the product thereby acting as more than a mere conduit, the seller has the duty to exercise reasonable care in assembling and installing the product and in inspecting the product for latent defects." 106 N.C. App. at 329–30, 416 S.E.2d at 928 (cleaned up). Plaintiff alleges that a MadVapes employee "persuaded [him] to buy a vape device that required removable, CLC batteries, even though the batteries for such devices are known to be unsafe"; "taught [him] how to use the device"; and "selected the battery, . . . and then installed [it] in the device."

Yet, the seller assembly and installation discussed in *Crews* differ significantly from the installation of a battery in the present case. In *Crews*, the plaintiff suffered severe frostbite after a walk-in freezer door closed behind her and the interior door lock release button malfunctioned. *Id.* at 327, 416 S.E.2d at 927. The plaintiff filed suit against the defendant, whose employees "assembled and installed the various

pre-assembled parts of the freezer, including the freezer door in which the manufacturer had previously installed the . . . door latch assembly." *Id.* at 330, 416 S.E.2d at 929. By contrast, the "installation" here was merely the act of placing the CLC battery in the vaping device, a task Plaintiff anticipated performing himself when the original battery was depleted. As to a MadVapes employee persuading Plaintiff to purchase the battery, it is long settled that a seller has no duty to test or inspect a product when acting as "a mere marketing conduit between producer and consumer." *Davis v. Siloo Inc.*, 47 N.C. App. 237, 247, 267 S.E.2d 354, 360, *disc. review denied*, 301 N.C. 234, 283 S.E.2d 131 (1980). Furthermore, Plaintiff cites no cases in which our courts have concluded that mere persuasion to purchase an item exposes a seller to liability for a product defect.

Plaintiff further contends that Defendants "knew or should have known" that the battery could explode, precluding Defendants' invocation of the sealed container defense. "A non-manufacturing seller acting as a mere conduit of the product . . . ordinarily has no affirmative duty to inspect and test a product made by a reputable manufacturer. However, this rule does not stand where the seller knows or has reason to know of a product's dangerous propensity." *Nicholson*, 124 N.C. App. at 65, 476 S.E.2d at 676 (emphasis omitted) (cleaned up). At no point does Plaintiff's argument to this Court address a duty to inspect and test the battery. Instead, Plaintiff first focuses on Defendants' knowledge of battery explosions and manufacturer warnings that CLC batteries should not be used in vaping devices, then concludes that

"MadVapes warned its own employees about the importance of battery safety. But it didn't warn [Plaintiff] about these things." Rather than challenge Defendants' failure to discover the latent defect, Plaintiff essentially reasserts his failure-to-warn claim. Consequently, Plaintiff's argument under *Nicholson* is overruled.

Finally, Plaintiff alleges that Defendants are prohibited from asserting the sealed container defense because "Defendants misrepresented the authenticity of the battery." Plaintiff cites *Davis*, in which this Court stated that although "the seller of a product is ordinarily not liable for his failure to discover . . . product defects which are latent," this rule does not apply in some instances, including "where the seller makes representations concerning the product." 47 N.C. App. at 247, 267 S.E.2d at 360 (citation omitted). This Court did not discuss or apply the exception in *Davis*; however, our Supreme Court applied the exception in *Jones v. Raney Chevrolet Co.*, 217 N.C. 693, 694, 9 S.E.2d 395, 396 (1940).

In *Jones*, a retail automobile "dealer represented to the owner that the automobile was equipped with good, reliable brakes when it knew, or by the exercise of due care could have known, that the automobile had defective brakes." *Id.* As a result of the defective brakes, "the automobile was wrecked resulting in injury to the plaintiff." *Id.* Our Supreme Court concluded: "A retail dealer who takes a used truck in trade and undertakes to repair and recondition it for resale . . . owes a duty to the public to use reasonable care in the making of tests for the purpose of detecting defects which would make the truck a menace." *Id.* (citation omitted). In addition, the

dealer "is charged with knowledge of defects which are patent or discoverable in the exercise of ordinary care." *Id*. (citation omitted).

In Plaintiff's view, Defendants' representation was that the battery in question was an authentic Samsung battery, when in reality it was a counterfeit Samsung battery. Yet, even if true, this is not a representation that was shown to be relevant to Plaintiff's injury, as it is undisputed that the defect in the battery in question was *latent* and *not reasonably discoverable* in the exercise of ordinary care. Thus, this argument is similarly overruled.

### III.  Conclusion

For the foregoing reasons, we conclude that Plaintiff's claims are governed by the Products Liability Act; that Defendants are not barred from raising the sealed container defense pursuant to N.C. Gen. Stat. § 99B-2(a); and that Plaintiff cannot surmount this defense. Accordingly, we affirm the orders of the trial court.

AFFIRMED.

Judges FLOOD and STADING concur.