**Brian ST. CLAIR, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 2:96CV871.**

United States District Court, M.D. North Carolina, Greensboro Division.

Jan. 6, 1998.

524

**525**

Douglas S. Harris, Greensboro, NC, for plaintiff.

Jonathan B. Berkelhammer, Smith, Helms, Mullis & Moore, Greensboro, NC, for defendant.

### MEMORANDUM OPINION

BEATY, District Judge.

This case comes before the Court initially on Defendant's Motion for Summary Judgment [Document # 11]. In response, Plaintiff has filed a Motion for Voluntary Dismissal Without Prejudice [Document # 14], a Motion for Extension of Time within which to name an expert witness [Document # 15], and a Motion for Extension of Time within which to amend the Complaint [Document # 16]. Given that this matter is approaching a scheduled trial date of January 12, 1998, Defendant has also filed a Motion to Dispense with Mediation [Document # 17]. The Court will discuss Plaintiff's Motions and Defendant's Motion for Summary Judgment in turn, however, in view of the closeness of a scheduled trial date and the Court's ruling on the parties' discovery and dispositive motions, court-ordered mediation will not serve any useful purpose. Therefore, without further discussion, Defendant's Motion to Dispense with Mediation is allowed.

## I. FACTUAL BACKGROUND.

This action resulted from an automobile accident on August 27, 1993, at the intersection of Fisher Park Circle and North Elm Street in Greensboro, North Carolina. Plaintiff, Brian St. Clair, was driving a 1991 Cadillac DeVille along North Elm Street when a 1980 Volkswagen crossed immediately in front of him in an attempt to execute a left turn onto North Elm Street from Fisher Park Circle. Plaintiff's vehicle struck the driver's side of the Volkswagen, resulting in substantial damage to the Volkswagen and to the front of Plaintiff's vehicle. Plaintiff alleged that he was driving at approximately thirty-five miles per hour prior to the collision and attempted to apply his brakes as soon as he observed the Volkswagen enter his path. According to the police officer's accident report, Plaintiff's vehicle left twenty-nine feet of tire marks leading up to the collision. The police report also estimated that Plaintiff's vehicle sustained approximately $3,000 in damages.

Plaintiff's 1991 Cadillac DeVille was equipped with seat belts and a supplemental inflatable restraint system, more commonly known as an air bag system. Plaintiff states that his seat belt was fastened and engaged during the accident. However, the gravamen of Plaintiff's cause of action is that the vehicle's air bag did not deploy. Plaintiff alleges that he sustained injuries to his right wrist and his right knee as a result of the accident. Plaintiff attributes his wrist injury to his having to grip and press down on the steering wheel to such an extent that the steering wheel bent during the accident. Plaintiff further alleges that the failure of the air bag to deploy caused his knee injury to the extent that his knee hit the lower part of the dashboard in the vehicle. Plaintiff did not report or complain of any injuries at the accident scene, but he subsequently received medical treatment consisting of surgery to his wrist and knee.

Plaintiff's vehicle after the accident was towed to Black Cadillac–Olds, a dealership in Greensboro, North Carolina. Plaintiff alleges that the shop manager and mechanics who repaired Plaintiff's vehicle suggested to him that the air bag in his vehicle should have deployed during the accident. As a part of the repairs to the vehicle, the mechanics replaced both the bent steering wheel and the air bag system components in the vehicle. Although Plaintiff requested that the items removed from his vehicle as a part of the repair be preserved, the dealership failed to keep the items for inspection by either party for the purpose of this lawsuit.

## II. PROCEDURAL HISTORY.

On August 27, 1996, Plaintiff filed a Complaint in the North Carolina General Court of Justice, Superior Court Division, in Greensboro, North Carolina, alleging product liability claims against Defendant General Motors Corporation. Plaintiff's first cause of action asserted a claim for negligence in the design and manufacture of the air bag system in Plaintiff's 1991 Cadillac DeVille. Plaintiff's second cause of action asserted a claim for breach of an implied warranty of merchantability. Plaintiff alleges that the collision involving his vehicle on August 27, 1993 occurred under such conditions that the air bag in his vehicle should have deployed. Plaintiff further contends that, because the air bag did not deploy, the system must have been defective and that Defendant should have detected the defect upon a reasonable inspection. Plaintiff bases his claim for damages upon the theory that Defendant's alleged negligence and breach of implied warranty caused an enhancement in Plaintiff's injuries to his wrist and knee. Specifically, it is Plaintiff's contention that, absent the alleged defect in the air bag system, his injuries either would not have occurred or would have been greatly diminished.

On October 18, 1996, Defendant removed this case to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction.[1] On January 23, 1997, Plaintiff and Defendant both received notice of an initial pretrial

---

1. Section 1441 provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

conference scheduled by the Court. Counsel for the parties subsequently met and agreed upon a Joint Rule 26(f) Report which was approved in an Order dated February 21, 1997. The Joint Rule 26(f) Report required all general and expert discovery in the case to be completed by August 25, 1997. With respect to expert witnesses and their opinions, the Report provided for "sequential disclosure and discovery of experts" to occur in the following manner:

Reports from retained experts under Rule 26(a)(2) are due during the discovery period:

From Plaintiff—within sixty (60) days of filing the Joint Rule 26(f) Report, with the deposition of Plaintiff's expert(s) to occur within thirty (30) days thereafter.

From Defendant—within thirty (30) days from completion of the deposition of Plaintiff's expert as referred to above, with the deposition of Defendant's experts(s) [sic] within thirty (30) days thereafter.

(Joint Rule 26(f) Report ¶ 2.) Thus, Plaintiff was to disclose the identity of his expert and provide Defendant with a report of the expert's opinions by April 23, 1997, with the deposition to occur no later than May 22, 1997. Plaintiff was also required to make any amendments to his pleadings within thirty days from the date the Report was filed which was until April 23, 1997. (*Id.* ¶ 5.) Defendant was thereafter required to disclose any information about the identity of its expert by July 21, 1997, and complete all depositions by August 20, 1997.

Plaintiff, however, failed to identify or disclose the opinion of any experts as required by the Joint Rule 26(f) Report. In addition, Plaintiff did not seek any amendments to his pleading by the April 23, 1997 deadline. Notwithstanding Plaintiff's failure to comply with the discovery deadlines, Defendant identified its expert as well as provided a report of the expert's opinions by the deadline of July 21, 1997, as set out in the Report. In addition, on July 22, 1997, Defendant served Plaintiff with a request for document production and a series of interrogatories both of which requested detailed information to substantiate Plaintiff's allegations that the air bag system of his vehicle was defective.

Plaintiff did not respond to Defendant's discovery requests until well after the August 25, 1997 deadline for the completion of all discovery in this case.

Both Plaintiff and Defendant had been notified as early as March 27, 1997 that a jury trial in this case would be set for the January 12, 1998 term of this Court. After Plaintiff failed to comply with the discovery schedule which ended on August 25, 1997, Defendant on August 26, 1997, filed a notice of its intention to file a dispositive motion in this case. Thereafter, on September 24, 1997, Defendant filed a Motion for Summary Judgment on the basis that, in the absence of expert testimony, Plaintiff could not establish his claims against Defendant. It was not until October 29, 1997 that Plaintiff responded to Defendant's motion by filing the following motions: a Motion for Extension of Time within which to name an expert accompanied by an affidavit from an individual Plaintiff identified for the first time as an expert witness, and a Motion for Extension of Time within which to amend the Complaint. As an alternative, Plaintiff also filed a Motion for Voluntary Dismissal Without Prejudice in the event the Court denied his motions to extend time. In addition, Plaintiff provided Defendant with responses to Defendant's written discovery requests which had been submitted on July 22, 1997. In the discussion that follows, the Court will first consider the three motions filed by Plaintiff because of their impact on the Court's resolution of Defendant's Motion for Summary Judgment.

## III. PLAINTIFF'S MOTIONS FOR EXTENSION OF TIME.

The procedural history set out above details the untimeliness of Plaintiff's actions with respect to the discovery deadlines established in this case. Nevertheless, Plaintiff has moved, pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, for an extension of time with respect to the deadlines set forth in the Joint Rule 26(f) Report. Specifically, Plaintiff now seeks an extension of time both to amend his Complaint and to name an expert. However, Plaintiff's motions for extension of time in both instances were not filed until October 29, 1997, after

Defendant filed a Motion for Summary Judgment. It is clear that Plaintiff's motions were filed well beyond the April 23, 1997 deadline for such actions to be taken. Under such circumstances, Rule 6(b) provides for extensions of time as follows:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... (2) upon motion made *after the expiration of the specified period* permit the act to be done where the failure to act was the result of excusable neglect....

Fed.R.Civ.P. 6(b)(2) (emphasis added). Therefore, in order for Plaintiff to receive the relief he now seeks, there must be evidence that Plaintiff's omissions resulted from excusable neglect. *Id.*

As interpreted by the United States Supreme Court, the term "neglect" is defined to encompass "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs., Co. v. Brunswick Assocs., Ltd. Partnership,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74, 85 (1993).[2] In defining whether a party's neglect is "excusable," the Supreme Court concluded "that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498, 123 L.Ed.2d at 89. *See also United States v. Borromeo,* 945 F.2d 750, 753 (4th Cir.1991). Some of the facts a court should consider in making this determination are "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the rea-

son for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498, 123 L.Ed.2d at 89–90. However, a court should also consider that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect" under Rule 6(b). *Id.* at 392, 113 S.Ct. at 1496–97, 123 L.Ed.2d at 87.

A. Extension of Time to Name an Expert.

With respect to the motion to extend time for naming an expert witness, Plaintiff states that he originally intended for his experts to be the mechanics at Black Cadillac–Olds where his vehicle was repaired. Plaintiff alleges that this was no longer a possibility because the mechanics subsequently refused to be expert witnesses in this case. As a result of this refusal, Plaintiff asserts that he "unavoidably passed the deadline" that was set for April 23, 1997. Plaintiff adds that he conducted a search for a new expert and eventually located another mechanic who was willing to provide what Plaintiff described as expert testimony. (Pl.'s Mot. for Ext. of Time ¶ 3.) However, Plaintiff does not offer any explanation as to when he learned about the original mechanics' reluctance to testify or when he located a new expert witness. In any event, it was not until October 29, 1997 that Plaintiff finally identified an individual as an expert and requested a retroactive extension of time so as not to violate the April 23, 1997 deadline as set out in the Rule 26(f) Report.

As an initial consideration in this matter, the Court finds it significant that a period of over six months went by before Plaintiff ever

---

**2.** In *Pioneer,* the Supreme Court interpreted the phrase "excusable neglect" in the context of a bankruptcy rule of procedure which authorized bankruptcy courts to accept late filings which resulted from "excusable neglect." 507 U.S. at 382–83, 113 S.Ct. at 1491–92, 123 L.Ed.2d at 81–82. The Supreme Court's interpretation has been found to apply to the term "excusable neglect" as used in contexts outside of the bankruptcy rules because it was based on the " 'commonly accepted meaning of the phrase' " and was formulated by reference to the Federal Rules of Civil Procedure. *Thompson v. E.I. DuPont de*

*Nemours & Co.,* 76 F.3d 530, 533 (4th Cir.1996) (holding that the *Pioneer* definition applies to Fed. R.App. P. 4(a)(5) and quoting *Pioneer,* 507 U.S. at 391–92 & nn. 9–10, 113 S.Ct. at 1496–97 & nn. 9–10, 123 L.Ed.2d at 87–88 & nn. 9–10). Moreover, United States Courts of Appeals have previously applied the *Pioneer* definition to analyze "excusable neglect" under Fed.R.Civ.P. 6(b). *See Committee for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 825 n. 4 (9th Cir.1996); *LoSacco v. City of Middletown,* 71 F.3d 88, 93 (2d Cir.1995).

sought an extension of time or provided Defendant or the Court with an explanation for why he had failed to comply with the discovery schedule. Plaintiff attempts to explain his failure to meet the discovery deadline by attributing the delay to the refusal of the original mechanics to testify. However, this explanation also fails to justify Plaintiff's failure to take action in this Court at any point during the six-month period. As early as the passing of the April 23, 1997 deadline, Plaintiff made no attempt to notify the Court or Defendant of his inability to locate an expert witness. Plaintiff also failed to take advantage of the action of the Defendant in disclosing its expert's identity on July 21, 1997. Plaintiff had notice of his failure to comply with his own deadline as Defendant's disclosure notice made specific references to Plaintiff's failure to disclose the identity of its expert witnesses.[3] Furthermore, even with the passing of the August 25, 1997 deadline for the completion of discovery, Plaintiff did not take any action in this case until Defendant filed its Motion for Summary Judgment based upon Plaintiff's inability to prove his claims in the absence of expert testimony. Plaintiff's failure to act in face of the deadline that passed without any action (by Plaintiff) indeed constitutes neglect, but it is not such excusable neglect that is required by Rule 6(b).

The United States Court of Appeals for the Fourth Circuit has found that "[t]he most important of the factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the reason for the failure to" act. *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir.1996) (analyzing "excusable neglect" in connection with Fed. R.App. P. 4(a)(5)). As indicated previously, the only explanation provided by

Plaintiff is that the original mechanics he was relying on as experts refused to testify. However, even if this Court assumes without question that Plaintiff could not possibly locate a willing expert prior to October 27, 1997, Plaintiff has not given any reason for why he waited so long to seek an extension of time in which to name a new expert. Therefore, the Court finds that Plaintiff has not established in this instance that his failure to comply with the discovery deadlines in a timely fashion was the result of excusable neglect. Accordingly, Plaintiff's Motion for an Extension of Time to name an expert witness is denied.

**B. Extension of Time to Amend the Complaint.**

Plaintiff also seeks to amend his Complaint by adding jurisdictional language and more specific factual allegations. The proposed amendments do not change the substance of his claims against Defendant based upon allegations of negligence and breach of an implied warranty of merchantability. The Joint Rule 26(f) Report also provided a deadline for such amendments to the extent that Plaintiff had thirty days from the filing of the Report in which to amend his pleadings. Plaintiff again relies upon Fed. R.Civ.P. 6(b) in his request for an extension of time beyond the April 23, 1997 deadline to file an amendment to his Complaint. In light of the Court's ruling with respect to Plaintiff's motion for an extension of time to name an expert witness, Plaintiff's motion for an extension of time to file an amendment to his Complaint is also denied.

Plaintiff attempts to have the Court view the motion differently by suggesting that his failure to file the amendment to his pleadings

---

**3.** In addition to stating that "General Motors is hampered in its ability to provide its expert's final opinions because of plaintiff's failure to designate a liability expert or explain his theory of the case," (Def.'s Expert Disclosure at 2), Defendant provided a detailed explanation of Plaintiff's failure to disclose its expert in a footnote which stated as follows:

Plaintiff was to provide his expert disclosure within 60 days after the filing of the Joint Rule 26(f) Report. Since the Joint Rule 26(f) Report was filed February 21, 1997, plaintiff was to file his expert disclosure on or before April 23,

1997. The depositions of plaintiff's experts were to occur within the following thirty days, with General Motors' designation to occur within thirty days thereafter. Although General Motors is serving its expert disclosure within the time provided as if plaintiff had served his disclosure, General Motors reserves the right to make all appropriate motions regarding plaintiff's failure and by this filing does not waive any right and position it may have as a result of plaintiff's failure to comply with the Joint Rule 26(f) Report.

(*Id.* at 1 n. 1.)

by April 23, 1997 was "due to inadvertence." However, mere inadvertence does not normally constitute excusable neglect under Rule 6(b) of the Federal Rules of Civil Procedure. *See Pioneer,* 507 U.S. at 392, 113 S.Ct. at 1497–97, 123 L.Ed.2d at 87. Plaintiff in this instance as well had not provided the Court with any explanation as to why he waited six months before seeking an amendment or requesting an extension of time. Therefore, in light of the length of the delay, and Plaintiff's failure to provide any explanation other than inadvertence, the Court finds that Plaintiff's failure to act with respect to amending his Complaint was not the result of excusable neglect. Accordingly, Plaintiff's Motion for an Extension of Time in which to amend the Complaint is also denied.

## IV. PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL.

As an alternative to his motions for extension of time, Plaintiff moved for a voluntary dismissal without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. Rule 41(a)(2) provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). The decision of whether to grant or deny a Rule 41(a)(2) motion is within the discretion of the district court judge. *Marex Titanic, Inc. v. The Wrecked and Abandoned Vessel,* 2 F.3d 544, 546 (4th Cir.1993). However, the purpose of Rule 41(a)(2) is to allow freely for voluntary dismissals "unless the parties will be unfairly prejudiced." *Davis v. USX Corp.,* 819 F.2d 1270, 1273 (4th Cir.1987). In determining whether prejudice will result from a voluntary dismissal, a court "must focus primarily on protecting the interests of the defendant." *Id.*

In considering Plaintiff's motion for a voluntary dismissal, this Court finds that the circumstances of Plaintiff's action and the prejudicial effect thereof on the Defendant are similar to the circumstances in the case of *Andes v. Versant Corp.,* 788 F.2d 1033 (4th Cir.1986). In *Andes,* the Fourth Circuit found that the preparation of a summary judgment motion, when combined with the expenses of discovery, can constitute prejudice that is sufficient to justify denial of a voluntary dismissal without prejudice. *Id.* at 1036–37. Specifically in *Andes,* the defendants had already incurred significant expenses in responding to the complaint, filing motions to dismiss and motions for summary judgment, and engaging in discovery in the form of depositions, production of documents, and obtaining relevant expert opinions. *Id.* The Fourth Circuit explained that, although the case did not involve "extreme prejudice to [the] defendants," the proceedings were more advanced than the proceedings in other cases where voluntary dismissals had been allowed. *Id.* at 1036 (citing opinions which upheld voluntary dismissals when the defendant had merely filed a motion for transfer to another court or when the defendant had been a party for only four months, participating in little or no discovery). *See also Armstrong v. Frostie Co.,* 453 F.2d 914, 916 (4th Cir.1971) (stating that denial of a voluntary dismissal is not an abuse of discretion when proceedings are at an "advanced stage").

Similar to the circumstances in *Andes,* Defendant in the instant matter had incurred expenses in responding to the Plaintiff's Complaint, as well as filing a Motion for Summary Judgment with a supporting memorandum and accompanying exhibits.[4] Defendants are further prejudiced to the extent that prior to Plaintiff's motion for voluntary dismissal they had incurred expenses of discovery by deposing Plaintiff, preparing interrogatories and requests for document production, developing expert testimony, and submitting to Plaintiff a report of the expert's opinions. In addition, at the time Plaintiff filed his motion for a voluntary dismissal, over a year had elapsed since Plaintiff filed his initial Complaint in state court on August 27, 1996, the period for discovery had been closed for approximately two months, and only two-and-a-half months were remain-

---

**4.** While Defendant's motion is a factor in this analysis, the Court acknowledges that the filing of a summary judgment motion in and of itself does not, without more, constitute sufficient prejudice to justify denying a request for dismissal without prejudice. *See Andes,* 788 F.2d at 1036 n. 4

ing before the January 12, 1998 trial date. Similar to *Andes,* these are factors sufficient to show prejudice to Defendant and weigh against Plaintiff's request for a voluntary dismissal of its Complaint without prejudice.

As an additional factor, the Court finds it significant that Plaintiff's motion was filed in direct response to Defendant's Motion for Summary Judgment and that Plaintiff's sole purpose in seeking a dismissal, as stated in his motion, was to allow him to "begin anew with the case" so he can disclose his expert and amend his Complaint in a timely manner. (Pl.'s Mot. for Voluntary Dismissal ¶ 3.) Essentially, by requesting a voluntary dismissal without prejudice, Plaintiff attempts to avoid the adverse consequences of his own failure to comply with the deadlines originally set out in the Joint Rule 26(f) Report.

Plaintiff seeks by the motion for voluntary dismissal to obtain an opportunity which was lost due to his own omissions. *Cf. Paturzo v. Home Life Ins. Co.,* 503 F.2d 333, 336 (4th Cir.1974). In *Paturzo,* the Fourth Circuit found that the district court, in denying a request for dismissal without prejudice, "appropriately considered the fact that plaintiff had waived his right to a jury trial by failure to make a timely demand, and that plaintiff was requesting a jury in his newly filed action." *Id.* The Fourth Circuit upheld the district court's decision not "to permit plaintiff to use indirect methods to obtain those rights he had forfeited through his own lack of diligence." *Id.* Likewise, this Court finds that it is not appropriate to allow Plaintiff to use a motion for voluntary dismissal without prejudice as an indirect means of correcting his initial failure to pursue his case in a timely fashion. Therefore, the Court in its discretion will deny Plaintiff's Motion for Voluntary Dismissal without prejudice.

## V. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

Defendant has moved for summary judgment on the grounds that Plaintiff cannot establish his claims in the absence of expert testimony.[5] Generally, summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the Court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield of Va.,* 67 F.3d 53, 56 (4th Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). However, judges are not " 'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202, 213 (1986) (quoting *Schuylkill & Dauphin Improvement & R.R. Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867, 872 (1871)). Therefore, a motion for summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265, 273 (1986).

In view of the Court's decision to deny Plaintiff's motion for an extension of time to name an expert in this matter, Plaintiff lacks an essential element to establish his cause of action for negligent design and manufacture of air bag system in the 1991 Cadillac DeVille. Plaintiff has the burden of establishing the following elements: " '(1) evidence of a standard of care owed by the reasonably prudent person in similar circumstances; (2) breach of that standard of care;

---

5. When Plaintiff responded to Defendant's summary judgment motion by disclosing a report from his new expert witness, Defendant filed a reply arguing that, even if the Court accepted Plaintiff's untimely designation of an expert, the Plaintiff's new witness was not qualified to offer expert testimony on the issues involved in this case. In view of this Court's ruling on Plaintiff's motion to extend time to name an expert witness, the Court expresses no opinion on whether the individual identified by Plaintiff would have been qualified to give testimony as an expert in a trial of this matter.

(3) injury caused directly or proximately by the breach, and; (4) loss because of the injury.'" *Nicholson v. American Safety Utility Corp.*, 124 N.C.App. 59, 64–65, 476 S.E.2d 672, 676 (1996) (quoting *Ziglar v. E.I. du Pont De Nemours & Co.*, 53 N.C.App. 147, 150, 280 S.E.2d 510, 513 (1981), *disc. review denied*, 304 N.C. 393, 285 S.E.2d 838 (1981)), *aff'd and modified on other grounds*, 346 N.C. 767, 488 S.E.2d 240 (1997). Moreover, Plaintiff also has the burden to prove that the air bag system in his vehicle "was in a defective condition at the time it left ... [D]efendant's control." *Id.*

■ Similarly, with respect to Plaintiff's second cause of action alleging a breach of an implied warranty of merchantability, Plaintiff must establish (1) that his vehicle and the air bag system contained therein were subject to an implied warranty, (2) that the air bag system did not comply with the warranty but was, instead, defective when the vehicle was sold by Defendant, (3) that the defect in the air bag system caused injury to Plaintiff, and (4) that Plaintiff suffered damages as a result. *See id.* at 68–69, 476 S.E.2d at 678. Therefore in each instance of his cause of action, Plaintiff cannot meet his burden of proof unless he can establish by the evidence, among other things, that the air bag system in his vehicle was defective. *Cf. Penland v. BIC Corp.*, 796 F.Supp. 877, 883–885 (W.D.N.C.1992) (granting summary judgment for a defendant with respect to negligence and breach of warranty claims because the plaintiff could not prove the lighter at issue was defective).

In the absence of expert testimony by Plaintiff, Defendant has produced the testimony of its expert witness, Keith S. Schultz ("Schultz"), an engineer who is familiar with the design and performance of the air bag system in the 1991 Cadillac DeVille. Schultz explained in his report that the air bag system in Plaintiff's vehicle was designed so that the air bag would deploy in moderate to severe frontal collisions occurring at a speed of impact of nine to fourteen miles per hour. (*See* Report of Keith S. Schultz ("Schultz Report"), attached as Ex. 3 to Def.'s Mem. in Supp. of Mot. for Summ. J., ¶¶ 4–5.) In Schultz's opinion, Plaintiff's accident on Au-

gust 27, 1993 did not meet the criteria for triggering the air bag such that the system was in fact operating properly by not deploying during the accident. (*Id.* ¶¶ 12–13.)

Without expert testimony and the physical evidence consisting of the original air bag system from the vehicle, Plaintiff attempts to rely upon the police accident report to respond to the expert testimony offered by Defendant. The evidence from that report establishes at best that (1) Plaintiff was driving at approximately thirty-five miles per hour prior to the collision, (2) the other vehicle involved in the accident was traveling at approximately ten miles per hour prior to the collision, (3) Plaintiff's vehicle left approximately twenty-nine feet of tire marks after he applied his brakes, and (4) Plaintiff's vehicle sustained about $3,000 in damages. Plaintiff contends that these facts are sufficient to establish the speed that the two vehicles were traveling at the time of impact. Plaintiff, therefore, contends that the system must have been defective since the air bag did not deploy even at the range of speed that Defendant's expert suggested that the air bag was designed to deploy.

■ Under North Carolina products liability law, plaintiffs must offer "legal evidence tending to establish beyond a mere speculation or conjecture every essential element" of their claims. *Jackson v. Neill McKay Gin Co.*, 255 N.C. 194, 196, 120 S.E.2d 540, 542 (1961), *quoted by Penland*, 796 F.Supp. at 884. This Court finds that Plaintiff's argument regarding the speed of impact at which his accident occurred, an argument essential to his claim that the air bag system was defective, rests more upon speculation and conjecture than upon actual facts in the record. The only evidence in the record at this point is the statement from Defendant's expert that the severity or speed of impact in an accident cannot be assessed without performing a "crush analysis" of the subject vehicle, an analysis Schultz claims is impossible in this case because Plaintiff's vehicle was already repaired. (Schultz Report ¶ 17.) Therefore, based upon Plaintiff's failure to produce evidence to prove the air bag system in his vehicle was defective and should have deployed during the accident,

this Court concludes that Defendant is entitled to judgment as a matter of law with respect to both of Plaintiff's claims.

■■■ The Court also notes that, even assuming Plaintiff was able to prove the existence of a defect in the air bag system, summary judgment would still be appropriate in this case where there is no evidence of causation as to Plaintiff's injuries. With respect to both the negligence and breach of an implied warranty claims as asserted in this case, Plaintiff must demonstrate that the allegedly defective product caused his injuries. *See Nicholson*, 124 N.C.App. at 64–65, 68–69, 476 S.E.2d at 676, 678. With respect to causation, Plaintiff relies in this instance upon an enhanced injury theory of liability. Under the enhanced injury doctrine, plaintiffs may recover damages for injuries that were enhanced, or made more severe, by an allegedly defective product, even when that product did not directly cause the injury-producing event. *See Warren v. Colombo*, 93 N.C.App. 92, 95, 377 S.E.2d 249, 251 (1989). With respect to the application of the enhanced injury theory of liability to motor vehicle accidents, such plaintiffs bear the burden of proving the existence of an enhancement of injuries by demonstrating which aspect of the injuries was attributable to the accident alone and which aspect constituted an enhancement attributable to the defendant. *See Murphey v. Georgia Pac. Corp.*, 331 N.C. 702, 706–07, 417 S.E.2d 460, 463–64 (1992).

■■■ Plaintiff does not contend that the accident was caused by the failure of the air bag system to deploy, but argues instead that the injuries to his right wrist and right knee would not have occurred absent the alleged defect in the air bag system. Plaintiff contends that the purpose of air bags is to keep the individual away from portions of the vehicle during an accident. Plaintiff also asserts that he would not have injured his wrist by pressing on the steering wheel and that his knee would not have impacted the lower part of the dashboard with such force if the air bag in his vehicle had deployed. However, the Court finds that Plaintiff's assertion is based more upon speculation than upon evidence in the record. Plaintiff offers

no evidence to demonstrate that, with a deployed air bag, he would in fact have been unable to press upon the steering wheel or to hit his knee against the dashboard with similar force. Such evidence would be necessary to contradict the statement of Defendant's expert that the air bag system in the 1991 Cadillac DeVille was not designed to eliminate minor injuries or injuries to the lower extremities, injuries which in his opinion are similar to those sustained by Plaintiff. This Court, therefore, finds that Plaintiff has not established causation of his injuries based upon the enhanced injury theory of liability. Defendant is entitled to judgment as a matter of law on this additional ground. Accordingly, Defendant's Motion for Summary Judgment is granted because of Plaintiff's inability to prove every element of his claims.

## VI. CONCLUSION.

For the foregoing reasons, Plaintiff's Motion for an Extension of Time to name an expert witness, Plaintiff's Motion for an Extension of Time in which to amend the Complaint, and Plaintiff's Motion for Voluntary Dismissal Without Prejudice are **DENIED**. Further, the Court finds that based upon Plaintiff's failure to establish essential elements of his claim for negligence and breach of implied warranty of merchantability, there exist no genuine issues of material fact in the record, and Defendant is therefore entitled to a judgment as a matter of law. Therefore, Defendant's Motion for Summary Judgment is **GRANTED**. Finally, for the reasons stated, Defendant's Motion to Dispense with Mediation is **GRANTED**. An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.