¶ 47. The majority, without citing any authority, agrees with the trial judge, who also failed to cite any authority, that expert testimony was required to prove a prima facie case that the collision in which Mrs. Forbes was involved was hard enough to cause the air bags in her 1992 Oldsmobile to inflate. Also, the majority, citing Palmer v. Volkswagen of America, Inc.,904 So.2d 1077 (Miss. 2005), finds that Mr. and Mrs. Forbes failed to prove reliance upon an express factual representation by GM because they did not read, prior to purchasing the vehicle, the following factual representation contained in the owner's manual and upon which their claim was brought:
 The air bag part of the SIR system is in the middle of the steering wheel. The SIR system is only for crashes where the front area of your vehicle hits something. If the collision is hard enough, the "air bag" inflates in a fraction of a second. It helps restrain the driver, and then it quickly deflates. Some gray smoke is normal when this happens, and some people have reported mild coughing and watery eyes from it. But all these have been temporary. The air bag can give extra protection for the driver's upper body.
 ¶ 48. I believe the majority errs in both findings; therefore, I respectfully dissent.[3] However, before delving into the substantive part of my dissent, I find it necessary to briefly relate the facts illuminating the intensity of the rear-end collision.
 ¶ 49. On December 15, 1997, Hilda Forbes and her three grandchildren were traveling to Columbia, Mississippi, in the Forbeses's 1992 Oldsmobile Delta 88. Mrs. Forbes was driving behind a 1981 Chevrolet Chevette, which suddenly stopped and attempted to turn into a private driveway. Mrs. Forbes struck the Chevette from the rear, causing extensive damage to both her vehicle and the Chevrolet Chevette. The front portion of the Forbeses's vehicle was severely damaged, and the seat supports in the Chevette were broken. The Forbeses's vehicle air bag did not inflate even though the radiator support, on which one of the air bag sensors was located, was crushed. Additional damage to the Forbeses's vehicle required the replacement of the following items: the front bumper assembly, the right front *Page 970 
impact absorber, the grill and grill panel assembly, the front body radiator support, the front body vertical support, the windshield, the left front door shell, and the right quarter outer panel.
 ¶ 50. As a result of the impact, Mrs. Forbes was propelled forward into the windshield. She suffered a subdural hematoma. Dr. Howard Katz, a specialist in physical medicine, rehabilitation, and spinal cord injuries testified by deposition that Mrs. Forbes suffered significant cognitive dysfunction and had never completely recovered from the injury to her brain.
 ¶ 51. The majority finds that the Forbeses failed to prove that the air bag breached an express warranty or failed to conform to other express factual representations upon which they justifiably relied. In arriving at this decision, the majority states that the Forbeses's claim that they were assured by GM's "representation that its air bag in the 1992 Oldsmobile Delta 88 would inflate in a fraction of a second when the automobile was involved in a frontal collision and the collision was `hard enough.'" However, the majority asserts that this statement is incorrect for two reasons. The first reason is that "the evidence in the record does not support the statement that GM representatives made these statements," and the second reason is that the Forbeses, prior to purchasing the vehicle, never read the statement in the owner's manual concerning the air bag. I turn to a discussion of the first reason offered by the majority.
 ¶ 52. The majority has correctly quoted the essence of the Forbeses's claim but has mischaracterized it. The Forbeses do not claim that any GM representative told them anything about an air bag, and the majority's lengthy quote from the Forbeses's brief does not support the majority's implicit assertion that the Forbeses claim that Mr. Forbes was assured by GM's representatives that the air bag would inflate if the collision was hard enough. Apparently, the majority has confused "representation" with "representatives". What the Forbeses claim is that GM, with the insertion of the information in its owner's manuals regarding how the air bags work, made an express factual representation that the air bag would inflate in a fraction of a second if the collision was hard enough. This statement is in fact contained in the owner's manual.
 ¶ 53. I now turn to the second reason offered by the majority as an explanation of why the Forbeses cannot prevail. As already stated, the majority, relying upon Palmer, finds that the Forbeses "cannot justifiably rely on something that they never read" and that they "cannot complain that this section of the owner's manual was the `express warranty or . . . other express factual representations upon which [they] justifiably relied in electing to use the product.'"
 ¶ 54. I believe the majority's reliance upon Palmer is misplaced. In Palmer, the issue was failure to warn; whereas, here, the issue is not failure to warn, but failure to perform in accordance with a factual representation. Moreover, the Forbeses do not claim to have been harmed or misled by anything contained in the owner's manual, nor do they claim that the uninflated air bag, outside of the collision context, was unreasonably dangerous. Further, the Forbeses do not claim that they were misled into purchasing the vehicle or that Mrs. Forbes was injured because GM failed to warn her about how to use a vehicle equipped with an air bag.
 ¶ 55. The Forbeses simply contend that during the collision the air bag failed to conform to the representation that it would inflate in a fraction of a second if the collision was hard enough and that they produced sufficient evidence to prove that *Page 971 
the air bag failed to conform. As a result of the failure of the air bag to deploy, the Forbeses further contend that GM is liable under Mississippi Code Annotated section 11-1-63(a)(i)(4)(ii)(iii) (Supp. 2004). To aid in clarity, I quote section (a) in its entirety although the Forbeses rely only upon (a)(i)(4)(ii)(iii). Section (a) reads:
 (a) The manufacturer or seller of [a] product shall not be liable if the claimant does not prove by a preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
 (i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
 2. The product was defective because it failed to contain adequate warnings or instructions, or
3. The product was designed in a defective manner, or
 4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
 (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
 (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.
Miss. Code Ann. § 11-1-63(a) 4(ii)(iii) (Supp. 2004).
 ¶ 56. It seems to me that under Mississippi's Product Liability Act (Mississippi Code Annotated section 11-1-63 (Supp. 2004)), a claimant may file a claim under sections (a)(i)1, 2, 3, or 4. However, if the claimant pursues his claim under (a)(i)4, he must also prove (ii) and (iii), that is, that the defective condition rendered the product unreasonably dangerous to the user or consumer; and the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought. Literally applying the quoted law to the facts of this case can be confusing since there is the requirement of proving that the air bag was unreasonably dangerous to Mrs. Forbes, the user, when in fact she never used the air bag, nor was it designed to be used by her. Nevertheless, I now embark upon that task.
1. Did the Forbeses rely upon GM's factual representation?
 ¶ 57. Returning to the issue of reliance, I do not believe that it is fatal to the Forbeses's case that they may not have literally read the factual representation in the owner's manual provided they were aware of what was being represented in the manual and that representation played a role in their decision to purchase the vehicle. Mr. Forbes testified that he "went to great lengths to have an automobile with an air bag in it and a seat belt that would work in case my wife needed it, if it ever come [sic] to an accident or something." He also testified that "we paid extra money to get an air bag. We wanted an air bag." The customary practice is that a customer gets the owner's manual after purchase of the vehicle, but the features of the vehicle are usually explained to the customer, prior to purchase, by the salesman who is thoroughly familiar with the representations contained in the owner's manual.
 ¶ 58. In this case, Mr. Forbes was adamant that he wanted a car with an air bag. Based on Mr. Forbes's testimony, a reasonable inference may be drawn that he would not have purchased the car had it not been equipped with an air bag that *Page 972 
would deploy under the appropriate circumstances, even though he may not have actually read the representation in the owner's manual regarding the air bag until after he purchased the vehicle. Likewise, it is clear from his testimony that, in purchasing the vehicle, he relied upon the fact that the air bag was supposed to deploy in the case of an accident because he said he wanted an air bag that would "work in case my wife needed it, if it ever come [sic] to an accident or something." I find that the Forbeses presented a prima facie case on the issue of reliance.
 2. Was there competent evidence that the collision was hard enough?
 ¶ 59. As already observed in this dissent, GM states in its owner's manual that the air bag will inflate when the front area of the vehicle is involved in a crash if the collision is hard enough. GM, without citing any authority, argues that proof — that the collision was hard enough for the air bag to inflate — must be made through expert testimony. On the other hand, the Forbeses argue that they presented a prima facie case that the collision was hard enough to cause a proper functioning air bag to inflate.
 ¶ 60. In its owner's manual, GM does not define or qualify the phrase, "hard enough." Nevertheless, GM insists that the Forbeses should have presented expert testimony to ascertain how hard is "hard enough." The majority embraces this argument, asserting that the Forbeses presented no authority to support their argument that they presented sufficient evidence to prove that the collision was "hard enough" to inflate the air bag.
 ¶ 61. The Forbeses presented the testimony of Danny Alexander, Officer Tolar, and Jim Pachmyer to establish that the collision between the Forbeses' Delta 88 and the Chevrolet Chevette was hard enough to inflate the air bag. Danny Alexander, owner of the Chevrolet Chevette, was in the front seat of the Chevette on the passenger's side when the accident occurred. Danny testified that the impact of the accident broke the seat and knocked him into the trunk of the car and that the paramedics had to remove him from the car.
 ¶ 62. Officer John Wayne Tolar, chief of detectives with the Columbia Police Department, was at the scene of the accident. Mr. Tolar testified that the front passenger seat of the Chevette was broken down to the rear back seat. Mr. Tolar further testified that he saw Mrs. Forbes' hair just above the steering wheel in the Forbeses's Delta 88. Mr. Tolar also testified that he thought that it was unusual that the air bag did not inflate in an accident such as this one.
 ¶ 63. Jim Pachmyer, an employee of Houston Watts Body Shop and Repair Service, testified that he towed the Delta 88 to Houston Watts Body Shop. Mr. Pachmyer further testified that the whole front bumper assembly, front cover, and front bumper were replaced. The front bumper assembly includes moldings, front reinforcement bars and support braces. The front bumper impact absorber, had to be replaced. The grill assembly and the header panel system were destroyed from the impact. However, Mr. Pachmyer acknowledged that these items were made of fiberglass and were designed to shatter upon impact. Additionally, the headlight assembly was destroyed. The hood and hood panel, the panel that comes across the front of the car between the fenders, had to be replaced.
 ¶ 64. After giving the aforementioned testimony, the following colloquy occurred between the Forbeses's counsel and Mr. Pachmyer: *Page 973 
Q. But were there two sensors in the Forbes' car?
A. Sir, I don't remember that. It's a positive fact.
 Q. And whether it was one or two, the air bag sensor was on what we're talking about?
A. Yes, sir.
Q. The radiator support.
A. Yes, sir.
Q. And you had to replace the radiator support?
A. Yes, sir.
Q. Why did you have to replace the radiator support?
 A. It was drove [sic] back from impact, sir. It was bent, I don't remember the exact dimensions, but we'll say four to six inches.
 Q. And being a support tell the jury what material that was made of?
 A. The radiator support is made of metal, sir. I don't know just what gauge metal that is, but it's metal support that comes from — goes all the way across the front end of your car. And they are pretty stout things. You don't bend them by just leaning up aside them or something of that nature.
 Q. And what you've described as pretty stout, am I understanding your testimony and based upon your best recollection it was, as you said, drove back four to six inches.
A. Yes, sir.
 Q. Do you remember about whether it would be one sensor or two sensors, were they still connected to that radiator support?
A. Yes, sir.
Finally, Mr. Pachmyer also testified that there was approximately $5,800 of damage to the Delta 88.
 ¶ 65. Based on this evidence, I find that the Forbes at least presented a prima facie case that the impact was hard enough to cause the air bags to inflate. GM should have been required to go forward with its case to refute this evidence, if indeed it could have.
 ¶ 66. The majority cites St. Clair v. General Motors Corp.,10 F.Supp.2d 523 (M.D.N.C. 1998) for the proposition that expert testimony is required to prove that a collision or impact is hard enough to cause an air bag to inflate. St. Clair is clearly distinguishable from our case. The only similarity that St.Clair has with our case is the failure of the air bag to inflate. The theory of recovery was totally different from the theory or recovery in our case. In St. Clair, the plaintiff sued General Motors Corporation, asserting a claim for negligence in the design and manufacture of the air bag system in his car.Id. at 526. An order was entered requiring the parties to identify their experts by a certain date. Plaintiff failed to comply with the order. Id. at 527. General Motors filed a motion for summary judgment, alleging that, in the absence of expert testimony, the plaintiff could not establish his claims of negligence in the design and manufacture of the air bag system in his car. Id. As a part of the documentation in support of its motion for summary judgment, General Motors "produced the testimony of its expert witness, Keith S. Schultz, an engineer familiar with the design and performance of the air bag system in [plaintiff's vehicle]. . . . In Schultz's opinion, [p]laintiff's accident . . . did not meet the criteria for triggering the air bag such that the system was in fact operating properly by not deploying during the accident." Id. at 532. Plaintiff produced no expert testimony to rebut Schultz's testimony. *Page 974 
 ¶ 67. As I have previously noted in this dissent, the Forbeses's theory of recovery was not based on defective design and manufacture of the air bag, but failure to conform to an express factual representation. Moreover, when GM's motion for a directed verdict was made and granted, no expert had testified that the collision was not hard enough to trigger the deployment of the air bag.
 ¶ 68. I find it very interesting that both the majority and the trial court took note of the fact that GM had engineers in the courtroom who probably could have answered the question as to whether the collision was hard enough to cause the air bag to inflate. The Forbeses are faulted for not calling these engineers. Well, it seems indeed strange that GM would have engineers ready to refute the Forbeses's case and not put them on to testify, resting instead on the dubious notion, without the benefit of any precedent, that the Forbeses were required to prove, by expert testimony, their contention that the collision was hard enough to cause the air bag to inflate.
2. Was the air bag unreasonably dangerous?
 ¶ 69. GM contends that the Forbeses did not introduce any expert testimony that the air bag system was defective and unreasonably dangerous to users at the time it left GM; therefore, the Forbeses did not meet their burden of proof under the Mississippi Products Liability Act, Mississippi Code Annotated section 11-1-63(a)(4)(ii) (Supp. 2004). General Motors explains that since the Forbeses's expert, George Green, admitted that he was not an expert in the design and testing of air bags, there was not sufficient expert testimony to prove that the air bag was unreasonably dangerous.
 ¶ 70. It seems quite obvious that an air bag which fails to inflate or deploy when it is suppose to is unreasonably dangerous not because it will cause injury, but because of its failure to operate so as to prevent injury. Therefore, proof that the collision was hard enough to activate deployment of an air bag that did not deploy is proof that the air bag was defective and unreasonably dangerous at the time that it left the manufacture unless there is other evidence indicating that the air bag had not been properly maintained or had been tampered with since leaving the manufacture. No such evidence of tampering or lack of maintenance was presented.
 ¶ 71. Further, Mr. Green, testified that an air bag should always deploy when a person is "thrown off the seat forward far enough to hit the windshield, that deceleration alone should always activate an air bag."
 3. Did the failure of the air bag to inflate proximately cause Mrs. Forbes's injuries?
 ¶ 72. GM, citing Dawson v. Wal-Mart Stores, Inc.,781 F.Supp. 1166, 1170 (N.D.Miss. 1992), asserts that "[w]hether [plaintiff's] action sounds in warranty or in tort, [he] must still prove that the defect in the product caused the damage of which [he] complained." GM maintains that the Forbeses failed to meet their burden of proving that their damages were proximately caused by the alleged breach of an express warranty by GM. GM explains that the Forbeses called two physicians at trial by deposition, Dr. Michael Molleston, a board certified neurosurgeon, and Dr. Howard Katz, a board certified physician in physical medicine, rehabilitation and spinal cord injury. GM contends that both physicians testified that Mrs. Forbes was injured in this accident, but neither opined *Page 975 
that her injuries were caused because the air bag did not deploy.[4]
 ¶ 73. The Forbeses argue that it was evident from the testimony of John Blunchi, one of their expert witnesses, that Mrs. Forbes's injuries were a direct and proximate cause of the failure of the air bag to inflate. Mr. Blunchi, expert in the field of accident reconstruction, testified that — based on his investigation, reconstruction of Mrs. Forbes's accident, and experience involving investigation and reconstruction of accidents — had the air bag in the Delta 88 inflated Mrs. Forbes would not have struck the windshield. Again, I find that this testimony was sufficient to establish a prima facie case that the failure of the air bag to inflate proximately caused Mrs. Forbes's damages.
 ¶ 74. The trial judge granted GM's motion, made at the conclusion of the Forbeses's case, for a directed verdict. The trial judge determined that expert testimony was required to demonstrate that the collision was hard enough for the air bags to deploy. I find that the evidence presented by the Forbeses was sufficient to require GM to go forward and rebut what was presented. In other words, I find that the Forbeses at least presented a prima facie case. In the absence of some authority holding that expert testimony is always required, as a matter of law, to prove that a collision is hard enough to activate air bags, I would decline to establish such a standard of proof in cases involving the failure of air bags to deploy. Apparently, the majority has no problem doing so, for it offers no basis for its holding on this point other than it said so.
 ¶ 75. Although, I realize that there are certainly some cases where expert testimony is required to establish even a prima facie case of liability, I do not believe cases involving the failure of the deployment of air bags are among such cases. To illustrate my point, suppose Mrs. Forbes, instead of striking the Chevette in the rear, had run headlong into an immovable brick wall at a speed of seventy miles per hour, leaving her car reduced to approximately half its original length. Could it be legitimately argued that it would take expert testimony to prove that the impact was hard enough to activate the air bags? I think not.
 ¶ 76. Based on the reasons discussed in this separate writing, I respectfully dissent. I would reverse and remand this case for a new trial.
KING, C.J., BRIDGES AND LEE, P.JJ., JOIN THIS SEPARATE OPINION.
[3] I do not disagree with the majority's finding that no error occurred in the trial's court's refusal to admit photographs of other wrecked GM vehicles in which the air bags inflated.
[4] The deposition testimony of Dr. Mollestion and Dr. Katz was not made a part of the record.